LEONARD WILLIAMS AND MARCUS W. BLISS *v.* THE VERMONT MUTUAL FIRE INSURANCE COMPANY.

Where the directors of the Vermont Mutual Fire Insurance Company voted to disallow a claim for loss by fire, under a policy issued to two persons jointly, for the reason, that one of the claimants had been indicted for setting fire to the building burned, and immediately gave notice of their determination to the claimants, which was more than sixty days previous to the then next stated term of the county court in Washington county, and also in the county where the claimants resided and where the property was situated, it was held, that the action for the loss was barred, under the act of incorporation of the company, by not being commenced to such next stated term, notwithstanding the directors subsequently, and after the claim was so barred, voted to pay to the claimant who was not so indicted one half of the amount of the whole loss.

A cause of action upon a policy of insurance, for a loss by fire, which has been barred by suffering the time limited in the charter of the insurance company for commencing actions to expire, is not capable of being revived by an acknowledgment, or a new promise.

ASSUMPSIT upon a policy of insurance, dated September 16, 1842, by which the defendants insured a saw mill, belonging to the plaintiffs, against loss by fire, to the amount of $400, for six years. The plaintiffs alleged, that the mill was burned September 2, 1843, and that notice thereof was duly given to the directors of the company. The writ was made returnable to the April Term, 1845, of Rutland county court. The defendants pleaded, first, the general issue ;— second, that by the seventh section of their act of incorporation it is provided, "That in case of any loss or damage by fire happening ' to any member, upon property insured in and with said company, ' the said member shall give notice thereof in writing to the direc- ' tors, or some one of them, or to the secretary of said company, ' within thirty days from the time such loss, or damage, may have ' happened; and the directors, upon view of the same, or in some ' other way, as they may deem proper, shall ascertain and determine ' the amount of said loss, or damage; and if the party suffering is ' not satisfied with the determination of the directors, the question ' may be submitted to referees, or the said party may bring an ac- ' tion against said company for loss, or damage, at the next court to ' be holden in and for the county of Washington, or in the county

'in which said party may reside, or in which said loss, or damage,
'may have happened, and not afterwards, unless said court shall be
'holden within sixty days after said determination; but if holden
'within that time, then at the next court holden in said county there-
'after," &c.; that on the fourth day of January, 1844, the defend-
ants, by their directors, rejected and disallowed the whole of the
plaintiffs' claim,—of which notice had been received, as alleged in
the declaration; that the defendants were notified of this deter-
mination on the tenth day of January, 1844; and that this was
more than sixty days previous to the April Term, 1844, of Wash-
ington county court, and also more than sixty days previous to the
April Term, 1844, of Rutland county court; and that so this action
should have been brought to one of those terms. The defendants
also pleaded a third plea, in substance the same with the second.
To the second plea the plaintiffs replied, that although it was true,
that the directors, on the fourth day of January, 1844, decided to
reject the plaintiffs' claim and gave notice to the plaintiffs thereof,
yet that the directors, on the seventh day of August, 1844, re-con-
sidered their former determination, and did then, and not before,
finally and conclusively decide upon, ascertain and determine the
amount of loss sustained by the plaintiffs; and that this was less
than sixty days previous to the September Term, 1844, of Rutland
county court, and that so this action was properly brought to the
next term subsequent, being the April Term, 1845, of said court.
To the third plea the plaintiffs replied, that after the time mentioned
in that plea, to wit, on the seventh day of August, 1844, the directors
ascertained and determined the amount of the plaintiffs' loss, and
that the next subsequent term of Rutland county court, being the
September Term, 1844, was holden within sixty days after such de-
termination was made, to wit, thirty days, and that the plaintiffs, not
being satisfied with the determination of the directors, brought their
suit to the next subsequent term of the court in Rutland county,
being the April Term, 1845,—"*without this*, that said directors, at
Montpelier aforesaid, on the fourth day of January, 1844, ascertained
and determined that there was no loss, for which the defendants ought
to pay, and rejected and disallowed the claim of the plaintiffs for
said loss, and refused to pay the plaintiffs any thing for the same,"—
(following the words of the plea.) To the replication to the second

plea the defendants rejoined, that they did not, on the seventh day of August, 1844, nor at any other time after the said fourth day of January, 1844, reconsider their former determination and finally and conclusively decide upon, ascertain and determine the amount of loss sustained by the plaintiffs. To the replication to the third plea the defendants rejoined, that the directors, on the fourth day of January, 1844, ascertained and determined that there was no loss to the plaintiffs by fire, as in the declaration mentioned, for which these defendants ought to pay, and rejected and disallowed the plaintiffs' claim for said loss and refused to pay the plaintiffs any thing therefor. Upon these rejoinders issue was joined. Trial by jury, April Term, 1847,—HALL, J., presiding.

On trial the plaintiffs gave in evidence a vote of the directors of the company, passed January 4, 1844, which was in these words,— "Voted, To reject the claim of Bliss & Williams, of Castleton, for 'loss,—notice September 27, 1843,—No. 33206,—Williams being indicted for the setting the mill on fire,"—also a vote of the directors, passed August 7, 1844, which was in these words,—"On 'report of J. T. Wright in case of the claim of Williams & Bliss, 'of Castleton, for loss in September, 1843,—notice September 27, '1843,—No. 33206,—whole rejected by the board Jan. 4, 1844,— 'on an examination of an agreement of said Bliss with said Wright, 'as *per* his report to allow said M. W. Bliss for one half of said loss 'on the saw mill, deducting one half of the amount saved,—Voted, 'To allow said Marcus W. Bliss the amount as reported, for his half 'of saw mill, the amount of $195,00." And upon this evidence the court decided, that the plaintiffs were entitled to recover upon the issues formed upon the second and third pleas.

Under the general issue, after the plaintiffs had given evidence tending to prove the facts alleged in their declaration, the defendants gave evidence tending to prove, that the plaintiff Williams purposely set on fire and burned the mill described in the declaration, at the time the same was destroyed as mentioned in the declaration; —and the defendants requested the court to charge the jury, that they would be warranted in finding that Williams so burned the mill on less evidence in this case, than upon an indictment against him for arson in setting the mill on fire. But the court instructed the jury, that it would require the same amount of evidence, on the

trial of this action, to show that Williams purposely set the mill on fire, as would be necessary upon trial on an indictment against him for arson in so doing.

Verdict for plaintiffs for $239,73. Exceptions by defendants.

*S. Foot* and *S. H. Hodges* for defendants.

The action of the directors on the fourth of January, 1844, upon the subject matter of the plaintiff's claim, was full and complete, and, so far as it respects the claim of Williams & Bliss, was final. The plaintiffs' right of action then accrued, and they were at liberty to bring their action at any time within sixty days thereafter; and not having done so, not only their *remedy*, but their *right of action*, was barred. The seventh section of the act of incorporation, limiting the time for commencing actions against the company for loss by fire, is founded on public policy, and not, like ordinary statutes of limitation, upon presumption of payment, and affects, not the *remedy* merely, but the *right*. *Spalding* v. *Butts et al.*, 6 Conn. 28. *Dutton* v. *Vt. M. F. Ins. Co.*, 17 Vt. 369. *Boydell* v. *Drummond*, 2 Camp. 157. *Hurst* v. *Parker*, 1 B. & Ald. 92, [18 E. C. L. 392.] *Short* v. *M'Carthy*, 5 E. C. L. 403. *Whitehead* v. *Howard*, 6 E. C. L. 158. When the *right of action* is barred by time, it cannot, as in cases where the *remedy*, merely, is affected, be revived by subsequent promise, or otherwise. WILLIAMS, Ch. J., in *Hunt* v. *Fay*, 7 Vt. 170. A promise to pay a debt discharged under the bankrupt law does not revive the right of action upon such debt. It may constitute a *new contract*, on which a suit may be maintained; but evidence of the original debt has no connection with it, except as furnishing a consideration for the new promise. 3 Wend. 135. *Lynbuy* v. *Wcightman*, 5 Esp. R. 98. *Roberts* v. *Morgan*, 2 Esp. R. 736. *Baker* v. *Wheaton*, 5 Mass. 509. If the right of action against the company commenced with the disallowance of the claim on the fourth of January, the limitation of that right commenced running at the same time; and when a statute of limitation begins to run, it is not interrupted, even by a subsequent disability. *Duroure* v. *Jones*, 4 T. R. 300. *Peck* v. *Randall*, 1 Johns. 165. But it is not claimed, even, that any subsequent disability existed in this case.

Williams et al. *v.* Vt. Mutual Fire Ins. Co.

Statutes limiting the time of action for debt are statutes of repose, —*Belknap* v. *Gleason*, 11 Conn. 160,—which suspend the remedy, but do not cancel the debt. Not so with statutes of limitation founded upon public policy, and which affect not the *remedy* merely, but the *right* to maintain the action. Such, for instance, are all statutes limiting the time for appeals,—statutes limiting the time for the prosecution of certain crimes,—of suits on penal statutes,—of real actions and rights of entry,—of personal actions for slanderous words, or libels,—for assault and battery, or false imprisonment,—against public officers, as collectors of revenue and sheriffs, for malfeasance and neglect of official duty,—and petitions to the supreme or county courts for relief in certain cases of alleged fraud, accident, or mistake.

But the action of the directors on the seventh of August was in no sense a reconsideration or re-examination of their former vote. On the fourth of January the directors acted upon and rejected the *partnership claim* of the defendants; and this was the only legal claim, that could possibly have grown out of the burning of the saw mill. On the seventh of August they merely agreed to pay to the individual, Bliss, $195,00, not on any legal claim which he had against the company, but solely in consideration of his being an innocent sufferer by the alleged wrongful act of his co-partner.

In regard to the degree of evidence necessary to sustain the defence, where it rests upon showing that the plaintiff wilfully set fire to his own building, we are not disposed to resist the authority of the case of *Thurtell* v. *Beaumont*, 8 E. C. L. 337.

The defendants also insist, that, upon the evidence, the issue formed upon the third plea should have been determined in their favor.

*E. N. Briggs* and *C. L. Williams* for plaintiffs.

Where there are two different determinations of the directors, made at different times, as in this case, every thing dependent upon or in any way affected by their determination should be considered as controlled by the latest determination;—it is the only one, which would be binding upon the company. There is nothing conclusive, or binding, in a vote of the directors; it is subject at any time afterwards to be reconsidered and either enlarged or limited in its ope-

Williams et al. *v.* Vt. Mutual Fire Ins. Co.

ation by a subsequent v ote.   If the directors, on the fourth of January, had allowed this claim in full, they could, at any subsequent time, before payment, have reconsidered their former vote and disallowed the whole; and the plaintiffs could not have enforced the first determination, but would have been bound to consider the disallowance as the determination and pursue the farther remedies given, within the time limited for the disallowance.   The application of this rule *vice versa* is all that the plaintiffs now claim.

If this provision is regarded as a special right, or peculiar privilege, which this company have over other contractors, it is competent for them to waive it; and the vote of August 7th amounts to such waiver.   If the provision is regarded as analogous to the general statutes of limitation, its operation may be obviated in the same way.   By the vote of August 7th every presumption of payment is removed; there is an express acknowledgment of a still subsisting unsettled claim.   Or if such statutes be regarded as statutes of repose, then, if the repose, which would otherwise have followed the vote of January 4th, has been disturbed, it is the defendants who have done it.   *Baxter* v. *Tucker*, 1 D. Ch. 353. *Ferris* v. *Barlow*, 8 Vt. 90.   *Hall* v. *Hall*, Ib. 156.   *Phelps et al.* v. *Wood*, 9 Vt. 399.

The opinion of the court was delivered by

DAVIS, J.   A verdict having been returned for the plaintiffs, for one half of the amount of the loss sustained by them in the destruction of their saw-mill by fire, the other half having previously been allowed and paid to Bliss, one of the plaintiffs, exceptions were taken by the defendants to the directions given by the county court, in respect to the issues of fact formed upon the defendants' second and third pleas.   A farther exception was taken to the decision of the county court, that, in order to exempt the company from responsibility, upon the allegation that Williams, one of the plaintiffs, fraudulently set fire to the mill, and thus caused its destruction, the same amount of evidence was necessary, which would be requisite to convict, on trial of an indictment for the same offence,—which is now abandoned.   As to the other point, it is obvious, that the bill of exceptions is so imperfect, that it fails to present, with any distinctness, the points of law to which counsel have directed our attention.   The court, it seems, upon proof by the plaintiffs of the

two votes in reference to this claim, adopted by the directors in January and August, 1844, decided that the plaintiffs were entitled to recover.

The principal question raised in argument is, whether the plaintiffs commenced this action within the time limited by the seventh section of the act incorporating the company; which section requires the action to be brought either in the county of Washington, the central place of business of the company, or in the county where the plaintiffs reside, or in that in which the property destroyed was situated, which two last are here the same, at the term of the court next after the directors shall have disallowed the claim in whole, or in part, unless such term occur within sixty days from such disallowance,—in which contingency, the action may be brought at the next succeeding term.

The loss in this case, it appears, happened on the second day of September, 1843,—and notice in writing was given to the proper officers on the 27th of the same month. On the fourth of January, 1844, the directors, at a regular meeting to take this claim into consideration, voted to disallow it entirely, on the avowed ground that Williams had been indicted for setting the mill on fire. Notice of this determination was given to the plaintiffs on the 10th of the same January. This action was commenced at the April Term, 1845, previous to which time, and subsequent to the passing of the vote aforesaid, two regular terms of the county court intervened, one in April and the other in September, the earliest of which was more than sixty days after that vote. It is obvious, then, if the proceedings of the board on that occasion are to be regarded as the '*determination*,' at the next court after which the action was required to be brought, the plaintiffs were too late and cannot recover. The plaintiffs contend, that they are not so to be regarded,—that the subsequent resolution of the same body in August, allowing to Bliss, in consequence of this loss, the sum of $195, being one half thereof, after deducting half of the property saved, should be taken in connection therewith; and that, when thus viewed, it cannot be said that any final determination was made, as to how much the company were willing to pay, or whether any thing, until this last vote was adopted. Or at any rate, it is supposed that these last proceedings may be regarded as an acknowledgment, or renewal, of the original

liability, and thus afford, as in ordinary cases under the statutes of limitation, a satisfactory answer to the plea.

Taken by itself, no one can doubt that the vote of January 4th was, in form and substance, a full and distinct determination of the board of directors, within the meaning of the seventh section of the act of incorporation, as construed by this court in the case of *Dutton* v. *The Vt. Mutual Fire Ins. Co.*, 17 Vt. 369. The claim was wholly disallowed, on the ground of a supposed fraudulent and felonious destruction of the property insured, by Williams, one of the plaintiffs. It is not doubted, but that the fact, if true, would afford a sufficient justification for the vote, and a complete defence to any action that might be brought upon the policy. There would be no necessity of showing that Bliss participated in the fraudulent act. The plaintiffs could have treated the vote as such, and have brought their action at the April term of the county court, 1844, if they elected to sue in Rutland county. They omitted to do so, and before the subsequent proceedings of August 7th were had, their right of action had been barred four months. If the claimants could have sued there, were they not bound to do so?

But I apprehend the last vote cannot be considered as a reconsideration of the former one. It does not purport to be such. There is no intimation, that farther investigations into the facts of the case had induced a change of views, in respect to the ground on which the whole claim was rejected. The former vote is referred to, but not rescinded, vacated, nor modified as a rejection of the *joint* legal claim of Bliss and Williams, the joint owners of the saw-mill destroyed. The directors, apparently upon equitable considerations, inasmuch as no imputations of fraud rested upon Bliss personally, and in a spirit of gratuitous liberality, decided to pay one half of the loss to him individually. He could have had no legal claim upon the company in that form. If he made one in the form in which it was finally allowed, it was a proceeding wholly independent of all regular action under the policy, and could consequently affect in no way any rights or interests depending upon it. We cannot, therefore, regard this collateral proceeding as having any effect in restoring to the two partners any joint rights, which, through their own negligence, had been extinguished before that proceeding was had.

Still less reason is there for holding, that the vote of August can be regarded as an acknowledgment and revival of the claim sued, expressly, or by implication in consequence of payment of a part, supposing payment to have followed the vote,—as it doubtless did. Is there good ground for the opinion, that a cause of action of this kind is susceptible of renewal, when once barred, as matters of indebtedness are, under the ordinary statutes of limitation? No inconsiderable portion of the argument of the defendants' counsel has been devoted to this point. Nothing decisive can be predicated in respect to it, from the language of the act, which is, that the party may bring an action at a court next to be holden, &c., and *not afterwards*,—language very nearly identical with that used in the general statutes of limitation. It is quite different from that employed in respect to the presentation of claims to commissioners upon an insolvent estate, where, if not presented by the time prescribed, they are declared to be forever barred. Accordingly it was determined in the case of *Hunt* v. *Fay, Adm'r*, 7 Vt. 170, that a creditor residing in New Hampshire, where the intestate had resided, who had failed to present his claims there, while the commission was open, had lost all right to have them allowed under an ancillary administration in this state,—they being regarded as extinguished. Nor is the action founded upon a tort, or to be regarded in the light of a penalty, and for that reason incapable of renewal, as determined in *Hunt* v. *Parker*, 1 B. & Ald. 92; *Oothout* v. *Thompson*, 20 Johns. 277. The claim is founded in contract. It is, however, a contract of a peculiar description, resembling a wagering contract; in which the Insurance Company, for a small premium advanced, and afterwards annually renewed by instalments graduated according to the aggregate losses of all the insured, undertake to indemnify each one to a stated amount, in the event of a casual loss by fire. The amount for which they may become responsible greatly exceeds the premium paid, or agreed to be paid; and the liability depends upon a contingency, over which neither party has any control. For whatever the company may eventually have to pay, they become liable by positive stipulation, rather than upon a principle of natural justice, growing out of an adequate consideration received. So far as this liability exceeds the premium paid and secured, it more nearly resembles a penalty, than a simple debt, and thus would more

Williams et al. *v.* Vt. Mutual Fire Ins. Co.

naturally fall into the class of cases, in which statutes prescribing a time within which suits shall be brought are construed as limitations upon the liability, rather than mere denials of a remedy.

Other considerations, arising from the nature of these contracts, and the necessity of prompt and speedy adjustment of all losses claimed, in order that all necessary assessments may be made while those, on whom they are to be made, remain members of the company, would seem to point to a similar result. In addition to this, the case is quite analogous to those contracts, in which there is a positive stipulation to do some act, provided specific demand be made within a specified time, or provided some other precedent condition be performed. The limitation is contained in the very act of incorporation; it is, in effect, a part of the contract between the whole company in the aggregate, and every individual member. In the event of a loss, which is not adjusted by the corporation to the satisfaction of the sufferer, and if no reference shall be agreed on, the former become liable to a suit at law, provided such suit be instituted within a short but definite period, adjusted to its business exigencies. If the prescribed time be suffered to elapse without suit, there remains no longer a legal liability in any form. There is no indebtedness, which, though by the operation of the statute incapable of being enforced by suit, may nevertheless be reanimated and invested with that quality, by an acknowledgment, or new promise. Such we believe to be the proper construction of this act.

It is unnecessary, therefore, to inquire whether the circumstances, which transpired, in this instance, subsequent to the 4th of January, were of a character, which, in the ordinary case of a debt, would remove the statute bar, either as an acknowledgement of the debt, or a part payment. For the same reason it is unnecessary to examine into the correctness of the ruling of the county court in respect to the issue formed upon the third plea.

The judgment of the county court is reversed and a new trial granted.