ÆTNA INSURANCE COMPANY *v*. JAMES B. MOUNT.

[44 South., 162.]

1. INSURANCE. *Fire policy. Fireproof safe clause. Evidence.*

A merchant, having a policy of fire insurance on his merchandise conditioned on his keeping books showing the status of his business and requiring him to deposit them in a fireproof safe when the store was not open for business, failed to comply with the policy when he changed his system of bookkeeping, used new books, which brought forward only the footings of the old ones, and did not keep the old books in a fireproof safe, whereby they were destroyed in the fire which burned up the merchandise.

2. SAME. *Waiver. Failure to return unearned premium.* '

An insurer, in a policy containing the usual iron safe clause and stipulating that if the policy should become void the unearned portion of the premium should be returned, does not waive a breach of the iron safe clause by failing, after knowledge of the loss, to return or offer to return the unearned portion of the premium; no demand having been made, nor any offer to surrender the policy.

3. SAME.  *Pleading.   Tender.*

  Where in a suit on a fire insurance policy a breach of the fireproof
    safe clause is a defense, the defendant may, the policy providing
    for return of the unearned part of the premium when it becomes
    void, plead the breach and tender the unearned portion of the
    premium with the plea.

4. SAME.  *Several policies.   Tender good to some.*

  Where an insurer denied liability on several fire policies, and
    tendered the unearned premium as to all, and liability was estab-
    lished as to some of them, the tender was good as to that policy
    on which it was not liable.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

Mount, appellee, was plaintiff in the court below; the in-
surance company, appellant, was defendant there.   From a
judgment in plaintiff's favor defendant appealed to the supreme
court.

The plaintiff, a merchant engaged in business in the town
of Smithland, in Point Coupe Parish, Louisiana, at which
point was located his store building containing a stock of goods
and merchandise, took out three policies of fire insurance with
the defendant company, as follows: one policy, dated July 1,
1904, numbered 3,694, for $1,000 on his stock of merchan-
dise while contained in the aforesaid building; one policy
dated September 11, 1904, numbered 3,786, for $1,750, of
which $1,500 covered his stock of merchandise aforesaid, and
$250 his store furniture and fixtures and iron safe in the store
building; and one policy dated March 5, 1905, numbered
4,050, for $900 jointly on his stock of merchandise and on his
store furniture and fixtures.   All three policies were of the
kind commonly known as the New York Standard form, and
were issued and delivered to the plaintiff by the defendant
company's agency in Baton Rouge, Louisiana.   On May 1,
1905, within the period of insurance stipulated in the policies,
the store building and goods and merchandise therein were to-
tally destroyed by fire.   The defendant having refused to pay
the amounts of the policies, the plaintiff brought this suit to

recover the amounts stated, aggregating $3,515. In addition to plea of general issue the defendant set up by, special plea, an alleged violation by the plaintiff of the fire proof safe clause of the policies as shown in the opinion. The plaintiff's replication to the special plea was that the defendant failed after the fire and before suit brought to tender back to plaintiff the unearned portion of the premium and was estopped to set up such defense. A demurrer by the defendant to the replication was overruled, and the defendant joined issue on the special plea. Tender of the unearned part of the premium was made by the defendant in court with its pleadings. No demand was made by plaintiff, before suit, for the unearned part of the premiums. The facts as to the pleadings and evidence are further stated in the opinion.

*McLaurin, Armistead & Brien,* and *Tim E. Cooper,* for appellant.

The two principal questions presented by this appeal are:

First, whether if this insurance had been taken out in the state of Mississippi, on property situated here, the insurance company could rely upon the breach of the iron safe clause, without returning or offering to return the unearned premium. And if this question is answered in the negative;

Second, whether, since this was a Louisiana contract, and since it is held in that state to be unnecessary to return the unearned premium, this court will follow the Louisiana rule and permit the defense to be made here, which might have been made if the policy had been there sued on.

But for the decisions in *Insurance Company* v. *Dobbins,* 81 Miss., one case on p. 623, s.c., 33 South, 504, and the other on p. 630, we would approach the discussion of the first question in the utmost confidence, and could, we think, assert that no case could be found holding that the insurer must return the premium as a condition of avoiding the policy. We concede that the language of the court in those cases suggests that a return of

the unearned premium is necessary, if the breach of the policy is insisted on; but the question there presented was different from that now before the court in this, that the premiums in those cases were received by the insurance company after the loss had occurred, while the premiums in this case were paid at the time the policies were issued. We will take up the cases referred to by the court in its opinions in 81 Miss., and we shall attempt to show that they are irrelevant to the question here involved, and that in each state from which this court cited decisions, the rule is well settled that a return of the premiums is not required.

The notes of Mr. Freeman to the case of *Wheaton* v. *North British Insurance Co.*, 9 Am. St. Rep., 237, referred to by this court in its opinion, does not refer to the question here involved. The annotator there was dealing not with the question of the construction of the contract of insurance, and whether if a breach was insisted upon, the insurer was required *by the contract* to return the unearned premium. Mr. Freeman was referring to the question of estoppel by the conduct of the insurer after the loss had occurred, by which conduct the insured was invited to, and relying on which conduct he had incurred expense and the trouble of making proofs of loss. Works on insurance and in the decisions as a "waiver," but Mr. Freeman more accurately refers to it as an estoppel against the insurer. It is estoppel known in the books as an "estoppel by misrepresentation." Now, a waiver is a contract, and not only must the minds of the party meet upon it as a contract, but like all other contracts, it must be supported by a consideration, unless being acted on it becomes estoppel. 20 Ency. of Law, 1097; *Ripley* v. *Insurance Co.*, 30 N. Y., 446; *Stewart* v. *Crosby*, 50 Me., 134; *Howie* v. *Insurance Co.*, 32 Conn., 21. Mr. Bigelow's definition of an estoppel by misrepresentation is this:

"By misrepresentation is meant a false impression of some fact or set of facts created upon the mind of one person by

another, by language, or by language and conduct together, or conduct alone equivalent to language, where there appears to be no intention to warrant the same." If after loss has occurred under a policy which has been breached by the insured, by which breach the policy. is forfeited, the insurer is then for the first time informed of the fact, he may stand upon the forfeiture according to the terms of the contract; but if he does not do this, but so conducts himself as to warrant the insured in believing that the forfeiture will not be insisted upon, and the insured relying on such representations, is induced to, and does, incur expense and trouble, this changed condition of the insured furnishes the consideration for the waiver and results in estoppel. Now, it is apparent that when, as in this case, the insurer does nothing to lead the insured to change his position, and there is no change in his condition, the doctrine of estoppel, or waiver, can have no application. The right of the insured in such case to recover must exist, if at all, by the contract of insurance, and not from the waiver by the insurer, acted on by the insured and resulting in estoppel. We do not think this proposition was intended to be controverted by anything said by this court in the *Dobbins cases, supra.* In those cases, the position of the assured was changed after the loss had occurred. We do not think it is necessary to further consider so much of the opinion of the court as refers to Mr. Freeman's notes to the case of *Wheaton* v. *Ins. Co.,* 18 Pac. Rep., 758.

Taking up the cases referred to by this court, and which relate directly to the question whether it is incumbent on the insurer to return the unearned premium, as a condition of relying upon the forfeiture for breach of the contract of insurance, we will examine first the case of *Schreiber* v. *German-American Hail Ins. Co.,* 43 Minn., 368. In that case, the insured had given notes in a mutual company for the premiums on the policies, and after the loss, the insurance company sued upon the notes and enforced their payment. The Minnesota

.court expressly put its opinion upon the ground that this was an assertion of the validity of the policy. The quotation from that opinion by this court ends just where the supreme court of Minnesota came to consider the precise question involved in the case now before the court. It is to be here observed that the policy in the Minnesota case was breached by taking out additional insurance, and that the company had notice of that insurance before the loss, and did not cancel its policy, but after the loss, coerced payment of notes given by the insured. But immediately following that part of the opinion of the Minnesota court, quoted by this court in the *Dobbins case*, the Minnesota court proceeded as follows: "We find no case exactly like this. There are some which seem to intimate that before electing to avoid wholly the policy, the insurer must return the premium even voluntarily paid. *Fishback* v. *Ins. Co.*, 54 Cal., 422; *Harris* v. *Equitable Life Ins. Co.*, 644 New York, 196; *Home Ins. Co.* v. *Riel* (Pa.), 17 Atl. Rep., 36. Without expressing any opinion of what is said in those cases, we do not hesitate to hold in this case, that the defendant could not retain the premiums thus collected, and also avoid the policy; that under the circumstances, it was the defendant's duty, as soon as it learned of the breach of the condition, to determine whether it would abide by the policy and retain the premiums, or restore them and elect to avoid it. It has never returned nor offered to return the premiums, and by retaining them must be deemed to have elected to abide by the policy." Of the cases referred to by the Minnesota court, it is sufficient· to say, that in the New York case the objection was fraud in procuring the reinstatement of a lapsed policy, by reason of which the reinstatement never attached. It is further to be observed, that the recovery in that case was not for the amount of the policy, but only for the premiums paid.

In the case of *Home Life Ins. Co.* v. *Riel*, 17 Atl. Rep., 36, the defense was that the application for the insurance was not signed by the beneficiary. But she had paid the premiums for

several years, and thus ratified the signature to the application, by whomsoever made. In the California case of *Fishback* v. *Ins. Co.,* 54 Cal., 422, the defense was prior insurance, by reason of which the insurance sued upon never attached. But the agent had notice of it at the time he issued the policy, and so it was held that issuing the policy with that notice, waived the prior insurance. Again, it appeared that after the loss, the adjuster, with full notice, misled the insured into believing that the company would pay its part of the loss, by reason of which he settled with other companies for their proportionate part, and the company was held to be estopped by this. The opinion contains not a single citation of authority, and only a few lines in reference to the return of the premium. The citation of the *Schreiber case* by this court would range the Minnesota court in the favor of rule that the unearned premiums must be returned. But as appears from the cases cited above the Minnesota court has declined to so hold. See also *Johnson* v. *American Ins. Co.,* 41 Minn., 399.

We come now to the case of *Johnson* v. *The Southern Mutual Life Ins. Co.,* 79 Ky., 406, cited by this court. The company there had issued a policy which contained a stipulation that failure to pay premiums should avoid the policy, but that if as much as three years' premium be paid, then, notwithstanding the forfeiture, a new paid-up policy would be issued, upon demand, within thirty days after the forfeiture, for the equitable value of the original policy. Johnson, the insured, had paid five years' premiums of $129.88 each. A premium fell due October 21, 1875, and he paid in cash, $22.88, and gave his note for $107, due ninety days after date. The cash paid, and the note, would have carried the policy to October 21, 1876. Soon after the maturity of the note, the company without returning the note, gave notice that the policy was forfeited, but it continuously thereafter claimed to own the note, which, as we have said, would have carried the policy until

October 21, 1876.   The company was then claiming the note, which represented the whole year's premium, and in the meantime, asserting a right to forfeit the policy before the end of the year.   It is to be observed, however, that all that was involved in that case was the right to a paid-up policy, according to the value of .the old policy, measured by the premiums which had been paid on it, and the only relief obtained was for this paid-up policy.

In the case of *Phœnix Ins. Co.* v. *Stevenson,* 78 Ky., 150, the precise question now under consideration was involved.   In that case the insurer issued to the insured a policy of insurance upon his house for $3,000, providing in the policy that if he insured his house in any other company without the consent of the insurance company, the policy was to be void. He did insure his house in other companies, without the consent of the insurance company, and the house was burned.   It was there held that it was not the duty of the company, after being informed of the additional insurance and the burning, to return the premium for the time the policy had to run, from the burning to the expiration of the policy.   See also May on Insurance, 505, 507; Flanders on Fire Insurance, 170.

The court also refers to the case of *Phœnix Ins. Co.* v. *Tomlinson,* 125 Ind., 84.   In that case the insured had given a note for the premium and the policy contained a provision that in case the assured failed to pay the premium note at the time specified, the policy should not be in force and should remain null and void during the time said note remained unpaid after its maturity, and no action on the part of the company to enforce payment should be construed as reviving the policy, the payment of the premium after reviving the policy making it good for the balance of the term.   The policy also contained another provision, that in case of loss any note due by the assured should be deducted from the insurance.   The note was not paid by the assured and while it was unpaid the property was destroyed.   After the loss the company with full knowl-

edge received payment of the note. The court in considering the policy held that, since it could not be assumed that the assured was paying the note on a policy, which could not be enforced, and the company must have so understood that this was a waiver, and drew a distinction between that and another case in which a note had been given and after its maturity the loss occurred, and the note was never paid. It is, however, well settled in Indiana, that when a policy becomes void by reason of the act of the assured, he is not entitled to receive back any part of the premium. *Ins. Co.* v. *Houser,* 111 Ind., 266; *Ins. Co.* v. *Daubenspiel,* 115 Ind., 306. See also *Millers Manufacturing Ins. Co.* v. *Parsons et al.,* 106 North Western, 485, reported also in Lawyers R. A., vol. 4, New Series, p. 231; *Georgia Home Ins. Co.* v. *Rosenfield,* 37 C. C. A., 96; *Austin* v. *Mutual Reserve Fund Life Ass'n,* 132 Fed., 555; *Houdeck* v. *Merchants' & B. Ins. Co.,* 102 Iowa, 303, 71 N. W., 354.

As noted in *Taylor* v. *Grand Lodge A. O. U. W.,* 105 N. W., 408, the case of *Schreiber* v. *German-American Hail Ins. Co.,* 43 Minn., 367, 45 N. W., 708, is not an authority for the rule that the mere retention of the premium paid before notice of a breach of condition is conclusive evidence of an election to treat the policy as valid. Neither do the cases incidentally referred to by Chief Justice GILFILLAN in that case sustain this proposition. In *Fishbeck* v. *Phenix Ins. Co.,* 54 Cal., 422, there was present every element of a technical estoppel. The point is not decided in *Harris* v. *Equitable Life Assurance Soc.,* 64 N. Y., 196. In *Baker* v. *New York Life Ins. Co.,* 77 Fed., 550, it appeared that the insurance company for a full year after knowledge of all the facts treated the policy as in force. *Jones* v. *Ins. Co. of N. A.,* 90 Tenn., 604, 25 Am. St. Rep., 706, 18 S. W., 260, was' an action by the insured to recover the premiums. See comment upon these cases, and *Home Mut. Life Ass'n* v. *Riel,* 1 Monaghan (Pa.), 615, 17 Atl., 36; *Georgia Home Ins. Co.* v. *Rosenfield,* 37 C. C. A., 96, 95 Fed., 358, 361. In some states statutes have been en-

acted which require an insurance company to return all premiums which it has received, as a condition precedent to interposing a defense on the ground that the policy was obtained by misrepresentations. Mo. Rev. Stat., 1879, sec. 5977; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S., 519, 29 L. Ed., 934, 6 Sup. Ct. Rep., 837; Cal. Civ. Code, § 2617; and Va. Acts 1897, 1898, ch. 601, p. (Va. Code 1904, p. 638); *Virginia F. & M. Ins. Co.* v. *Cummings* (Texas Civ. App.), 78 S. W., 716; and *Metropolitan L. Ins. Co.* v. *Moore,* 117 Ky., 651, 79 S. W., 219, sustain the appellant's contention; but they rest upon what seems to us an erroneous theory. The rule there applied would be properly applicable in an action by an insurance company against the insured for the purpose of having the contract rescinded.

Neither is appellant's contention sustained by *Mississippi Home Ins. Co.* v. *Dobbins,* 81 Miss., 623, 33 South., 504. In that case the premium was paid after the agent of the company had notice of the loss; and after the notice of additional insurance the company furnished blanks and allowed the insured to make proofs of loss. It was held that, under the circumstances and under the terms of the policy with reference to the return of premiums upon cancellation of the policy, the company was estopped by its failure to return the unearned premium. *Commercial Assur. Co.* v. *New Jersey Rubber Co.,* 61 N. J. Eq., 446, 49 Atl., 155, was a suit by the insurer to cancel the policy.

In this case the insurer is not asking to have the contract rescinded. The premium came into its possession lawfully under color of what was assumed to be a valid contract, and it cannot be properly placed in a position of withholding it until payment has been demanded. *American Mut. L. Ins. Co.* v. *Bertram,* 163 Ind., 51, 64 L. R. A., 935, 70 N. E., 258.

We submit that the words, "become void or ceased," in the policy do not cover cases in which the policy is avoided by a breach on the part of the assured. There are many things

named in the policy wholly beyond the control of the assured upon the happenings of which the policy becomes void or ceases, *i. e.,* "a change in the interest, title or ownership of the subject of insurance, whether by legal process or judgment, or by the voluntary act of the assured or otherwise, or if with knowledge of the assured foreclosure proceedings be commenced, or notice given of the sale of any property covered by the policy, by virtue of any deed of trust or mortgage, or if any building, or any part thereof, fall, except as the result of fire." "When by reason of any of these things the policy becomes void or ceases, it is but just that the unearned premium be returned, for the assured does not by his own act bring about such conditions. But there is no reason, in law or morals, why any part of the premium should be returned when the policy is rendered void by the voluntary act of the assured. Such construction would carry the right to a return of a part of the premium even in the case specified in the policy of "false swearing by the assured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss." *Colby* v. *Ins. Co.,* 66 Iowa, 577. Such provisions are self-executing provisions. *Barry* v. *Order of Catholic Knights,* 119 Wis., 362. *Perry* v. *Ins. Co.,* 132 N. C., 283.

The iron safe clause is declared a reasonable one by the courts. But whether it be or not, it is one the parties have agreed on. It is part of the standard New York policy, and the appellant was required by the statute law of Louisiana to use that form in all of its contracts made in that state. It was one of the terms of the contract, and one of the conditions on which the insurer agreed to be bound. The assured agreed to perform its stipulations, and in event of failing so to do, that the policy as a contract of insurance should end. If it be held by the court, that notwithstanding the voluntary breach of the contract by the assured, he was under the circumstances entitled to a return of any part of the premium, he

must, surely, at least bring himself within the conditions upon which such return could be claimed.

We have thus far argued this case as though the contract had been made in this state, and as if this court would adopt its own view of the construction of the policy, uninfluenced by the decisions of any particular state.

We come now to look at the question from a consideration of the policies as Louisiana contracts. The contracts were not only Louisiana contracts, made in Louisiana, insuring property situated there, to be fully performed there, but they were contracts made under the operation and control of the statutes of that state, which statutes entered into these contracts as though they were written into the policies. Whatever constructions, therefore, have been put upon such policies by the courts of that state, it is submitted are of controlling influence, and especially if they were made before these policies were written.

It seems that the supreme court of Louisiana has not had presented to it the precise question which controls in this case. But the appellate court of that state has expressly ruled upon the question in an opinion delivered by Judge Pugh in the case of *William Harper* v. *American Fire Ins. Co.,* as yet unreported. It is in that case expressly held that no return of the unearned premium is required to enable the insurer to rely upon the forfeiture.

The statute of Louisiana under the operation of which the policies sued on were written, was enacted in 1898, and it prohibits fire insurance companies doing business in that state from issuing "policies on property in this state other than those which shall conform to the requirements of the New York standard form of fire insurance policies." Act No. 105, p. 151, 1898, sec. 22. The power of the legislature to enact such a statute is undoubted. But it is so essentially an exercise of legislative power, that it cannot be delegated. *Dowling* v. *Lancashire Co.,* 92 Wis., 63, 31 L. R. A., 112. To the

same effect are: *Anderson* v. *Manchester Fire Ins. Co.,* 59 Minn., 182, 28 L. R. A., 609; *Oneil* v. *Am. Fire Ins. Co.,* 166 Pa. St., 72, 26 L. R. A., 715. We have then a contract entered into between the parties; but its form, substance and meaning, depending, not upon what the parties intended, but upon what the legislature intended by the statute it enacted.

To say that a contract made in Louisiana under this statute, is to be construed under general laws applicable to agreements made by parties permitted to contract as they may choose, and that the courts of any one of the states in which a suit may be brought, can substitute their judgments, for that of those of the state in which the contract is made, would be to produce incalculable confusion. The assured who has the choice of the forum, would, when he had determined to sue, begin to inquire, not what the courts of the *loci contractus* had or would decide; but what court had by its opinions evidenced views more favorable to him. Because, as we may assume that the appellee realized that he could not recover in a suit brought on these policies in Louisiana, where the contracts were made, he has come into this state, hoping to leave behind him the statutes under which the contracts were made, and the decisions of the courts of that state construing such policies. If the decisions of the courts of this state had in his opinion, not been favorable to the contentions he makes, and those of Arkansas or Missouri, of Washington or of Maine, had promised success, he would have elected to sue in that state and not in this. But this court will not ignore the Louisiana statute. *Shaw* v. *Postal Tel. Co.,* 79 Miss., 670, s.c., 31 South., 222. Every stipulation and provision of the policy is controlled and imposed by the Louisiana statute.

The supreme court of Louisiana has uniformly held that a breach of the iron safe clause renders the policy void. 48 Ann., 223; 36 Am., 660; 41 Ann., 31; 52 Ann., 775.

The authorities are divided upon the question whether in a policy which insures property to which the iron safe clause

is applicable, and also other property, which by reason of its nature is not controlled thereby (as fixtures or a building), and the policy provides that a breach of the clause shall render the insurance void, the stipulation is divisible, or indivisible. In this state it is held that the insurance is divisible, and that a breach of the iron safe clause avoids the policy only as to the property to which it is applicable. *Insurance Co.* v. *The Bank,* 71 Mass., 608, s.c., 15, South, 392; *Mitchell* v. *Ins. Co.,* 72 Miss., 53, s.c., 18 South., 86.

But the supreme court of Louisiana takes the other view, and holds that a breach of the clause avoids the policy *in toto. St. Landry Co.* v. *Ins. Co.,* 38 South. Rep., 87.

The question is not one of procedure, and therefore to be governed by the law of the forum, but it is one going to the substance and meaning of the contract, and is of course controlled by the *lex loci contractus.*

*J. Lemkowitz, Alexander & Alexander,* and *George B. Power,* for appellee.

In behalf of appellee, our propositions are as follows:

1st. This case falls squarely within *Mississippi Fire Association* v. *Dobbins,* 81 Miss., 630, 33 South., 504, and the failure to return or tender the unearned premium before suit brought must be treated as violation of the express provision of the policy and a waiver of the forfeiture if there had been a forfeiture.

2d. No question of a Louisiana statute or of a Louisiana law is involved. Louisiana has no statute relative to the duty of tendering back the premium, nor has the question here presented been decided by the supreme court of Louisiana. Even if that court had construed it, this court, on the general law, such as waiver or estoppel, or the construction of a private contract, will be controlled by its own views of what is a proper construction.

3d. If the court should overrule *Mississippi Fire Associa-*

*tion* v. *Dobbins,* or should hold for any reason that the tender was unnecessary, we still say that there was a substantial compliance with the iron safe clause.

4th. There has never yet been a lawful tender. The payment into court was too late and was in full satisfaction of all the policies. In fact, one of the policies covered a loss on fixtures and to this the iron safe clause has no reference; and one of the policies in the Ætna, viz., for $900, was not issued until March 5, 1905, and the only irregularity complained of in the books was prior to January 1, 1905. The agreement as to the keeping of books was prospective, and after the issuance of this policy it is not even claimed that there was any failure of duty. Yet the tender was on condition of surrendering all of the policies, including this policy and the policy covering the fixtures.

1. The cases discussed in appellant's brief do not involve the clause in question which is contained in the New York standard form of policies, but they go off on questions as to what acts on the part of the insured amount to an estoppel or waiver under the general law. These cases might be pertinent if the question presented were whether the facts in this case bring it within *Mississippi Home Insurance Company* v. *Dobbins* instead of *Mississippi Fire Association* v. *Dobbins.* Those two cases were considered together by this court, and decided together. In the former case, the court commented on the inapplicablity of the argument which proceeded upon the assumption that the case presented nothing more than a mere retention of the premium by the company. Waiving that question, the court held that the company was estopped to set up the forfeiture because of the acts of the agent after fire, and after he knew of the loss, the failure promptly to disavow liability under the circumstances amounting to an estoppel. The natural result of the agent's silence and non-action was that Dobbins had to proceed on the idea that the proofs of loss were necessary and he was put to the trouble of making the

proofs of loss, and the court held with the Kentucky court and other courts that when the insurer learned of the forfeiture, even where there was no agreement in respect to the return of the premium, it was bound to either assent or cancel, and failing to do either it will be treated as having assented.   On the other hand, in the case of *Mississippi Fire Association* v. *Dobbins* case, the court, confronted by the standard policy found that the duty of the company on learning of the breach not only arose under the general law and as a matter of honesty and fairness, but arose under a special provision of the contract to the effect that if the policy should become void the unearned portion of the premium should be returned.   It is true that in the latter case the evidence left it uncertain whether the agent collected the premium from Dobbins after the fire and after he knew of the other insurance.   Had the evidence on this point been certain, the court might well have put its decision on the ground that acceptance of the premium after knowledge of the breach was itself a waiver; but, the court did not rest its decision on that point.   It could not well have done so, because there was no instruction touching the question and the case was tried without a jury.   However that may be, this court disposes of the case by citing the express provision of the contract and declaring, "that the appellant, instead of conforming to the terms of the contract, says the policy is void and yet holds on to all of the premiums."

While the pleadings presented squarely the question decided in *Mississippi Fire Association* v. *Dobbins,* yet under the general traverses testimony was taken and what transpired after the loss was shown, and we submit confidently that under that evidence the peremptory instruction was proper, even if *Mississippi Fire Association* v. *Dobbins* had not been decided, for the facts bring the case within *Mississippi Home Insurance Company* v. *Dobbins.*

It will be seen that most of the cases reviewed by appellants in their brief were those in which the knowledge of the breach

was received by the agent or the company before the fire, and we readily concede that most of the cases cited can be differentiated on the facts from both the *Dobbins cases* in that respect; but, we deny that there is any essential difference of principle involved where the knowledge of the breach comes before the fire and where it received afterwards during the adjustment. There may be a stronger reason for applying the rule where the knowledge is acquired before the fire, but the principle invoked to sustain the waiver is the same in both instances.

It is very generally held that, although policies of insurance prescribe that upon certain breaches of conditions the policy shall be void, they become merely voidable; our courts have time and again recognized this rule, and, in *Mississippi Home Insurance Company* v. *Dobbins,* cites with approval the Minnesota decision which held, that the breach of the condition did not make the policies absolutely void, but that they were void only at the *election* of the defendant which might waive the breach of the condition.

In 3 Cooley, Briefs on Insurance, p. 2690 (d), that author after discussing the rule which was sanctioned in *Mississippi Home Insurance Company* v. *Dobbins,* proceeds to the proposition involving the mere retention after loss with the knowledge of the breach, says: "Some cases hold that the retention after loss with knowledge then first obtained of a forfeiture or avoidance of a premium or assessment unearned at the time of such forfeiture or avoidance, may operate as a waiver of the defense the same as though the money had been originally accepted with such knowledge." The author cites many cases, among others *Schreiber* v. *German American Hail Insurance Co.,* 43 Minn., 367, which our court cited in *Mississippi Fire Association* v. *Dobbins.* This author, Cooley, then proceeds to state as follows: "Other cases proceed on the line that the rights of the parties are fixed by the loss and if insured was not entitled to recover, then mere retention of the premium does not

give the right," citing a case in Iowa and North Dakota and two decisions of inferior courts elsewhere.

Very many of the cases cited by appellant are those in which the inquiry of the court was whether there was an intentional concealment of a defense or whether the insured was misled and prejudiced. We have shown however that *Mississippi Fire Association* v. *Dobbins* was not decided solely on the doctrine of estoppel, but on waiver based on nonperformance by the company of an expressed stipulation; but, even where no such stipulation is involved the best considered cases now put the denial of the right to avail of the forfeiture on broader grounds.

Counsel for appellants proceeding on the erroneous postulate that this case is controlled by the first case of *Mississippi Home Insurance Company* v. *Dobbins* review and attempt to distinguish all of the cases referred to in the opinion in that case. They seem to forget that that case might be ignored or conceded to be erroneous, and yet this case fall squarely within *Mississippi Fire Association* v. *Dobbins;* but both cases are right in principle and on authority. Notwithstanding the numerous cases cited by appellant, we state with confidence that not one of them is an authority for the proposition that under a standard policy containing the clause in question in this case the company after knowledge of the breach can refuse to perform the obligation imposed on it by withholding the premium, and not insist on the forfeiture.

2. On our next proposition, as there is no question of conflict of laws involved, little need be said. Counsel for appellant must concede that the supreme court of Louisiana has never decided the question whether under a policy like this and under facts like these the company can avail of a forfeiture when it retains the premium.

Mount is a citizen of Mississippi, the companies are domiciled in northern states, and the property insured happened to be in Louisiana, where the policies were written and delivered. It is useless to inquire whether this makes the contract a Louis-

iana contract or not, for it is conceded that there is nothing peculiar about the Louisiana law. The court is not being called on to construe any Louisiana statute. The ingenious argument of appellant that since the Louisiana statute provides the form of the contract, the construction of the contract becomes the construction of the statute, is not tenable. "The fact that the standard policy is prescribed by statute does not change its character as a contract. It is put forward by the legislature as a contract to be entered into by the parties and to derive its validity from their consent." 1 Cooley's Briefs on Insurance, 531, citing *Chichester* v. *N. H. Co.,* 74 Conn., 510; *Reed* v. *Wash. Co.,* 138 Mass., 572.

Certainly the fact that the legislature prescribes a form which the parties may or may not adopt as a contract does not make the liability of either statutory; it is still contractual. It is useless to try to forecast what the Louisiana supreme court will hold when the question is presented. If we are to judge from its opinions on analogous and cognate questions, we would conclude that it would line up with this court and others holding with it. The Louisiana court has expressly decided that where the agent of an insurance company accepts a premium after knowledge of the forfeiture or avoidance, the company waives the breach. *Union Nat. Bank* v. *Manhattan,* 52 La. Ann., 36.

If the law of any state is to be looked to as controlling, it would seem to be the law of New York, for Louisiana in 1898 adopted the standard form of policy prescribed by the legislature of New York, and it will be assumed that if the form of policy is to be treated as a statute Louisiana adopted it with the construction given it by the New York courts. The New York courts have uniformly held with the courts of other states that companies must act with perfect good faith with the collections and retentions of premiums or they will be held to waive the forfeitures. See Cooley's Briefs on Insurance, vol. 3, 2684.

3. Our next proposition is that the evidence shows that there was a substantial compliance with the iron safe clause. It is

too well settled to need the citation of authority that substantial compliance of the iron safe clause is all that is required. The decisions of our court clearly hold or imply that that is the rule. Our court has held that the clause does not apply to books kept previous to the policy. *Ins. Co. v. Sheffy,* 71 Miss., 919, s.c., 16 South., 307. The same has been held in Louisiana. See *Richard* v. *Springfield Ins. Co.,* 114 La., 794.

The accidental failure to place a book containing part of an inventory in a safe is not fatal where the total has been carried into the ledger; and duplicate invoices have been held to be a sufficient substitute for an inventory accidentally left out of the safe and destroyed. Cooley's Briefs on Insurance, page 1828, citing *Merchant's Nat. Ins. Co.* v. *Dunbar,* 88 Ill. App., 575, and *McNutt* v. *Va. Fire Ins. Co.* (Tenn.), 45 S. W., 61; see also, as to loss of invoices, *Continental Fire Ins. Co.* v. *Cummings,* 78 S. W. Tex., 378; *Ins. Co.* v. *Cummings, Ib.,* 716.

4. Our next proposition is that the tender as finally made was insufficient.

Counsel for appellants unnecessarily cite many authorities to support the elementary proposition that a tender is unnecessary when by the acts or words of the party entitled to the payment the debtor is misled into not making it but none of the authorities cited go to the case where there has been nothing said or done to prevent a tender or to intimate whether it would be accepted or rejected.

The contention that there was no duty to return the premium because insured had not first surrendered the policy is without merit.

Argued orally by *Tim E. Cooper,* for appellant and *C. H. Alexander,* for appellee.

MAYES, J., delivered the opinion of the court.

The controversy in this case is as to policies No. 3,694 for the sum of $1,000, and No. 3,786 for $1,750, covering a stock of

merchandise owned by appellee. It was conceded in the argument of this case, by counsel representing appellant, that the other policy mentioned in this record, No. 4,050, is not in controversy, and therefore what we say only applies to the two policies in question.

The first question which we consider is: Was there a breach of the iron safe clause contained in the policy? The policy of insurance contained the following clause with reference to that subject, viz.:

"(1) The assured will take a complete itemized inventory of stock on hand once in each calendar year, and, unless such intentory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

(2) The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in the first section of this clause, and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy.

(3) The assured will keep such books and inventory—and also the last preceding inventory, if such has been taken—securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing in this, the assured will keep such books and inventory in some place not exposed to a fire which would destroy the aforesaid building; and unless such books and inventories are produced and delivered to this company for examination, after loss or damage by fire to the personal property insured hereunder, this policy shall be null and void, and no suit or action shall be maintained hereon. It is further agreed that the receipt of such books and inventories and the exami-

nation of same shall not be an admission of any liability under this policy, nor a waiver of any defense to the same."

By the above clause the insured is required by the contract to "keep a set of books, which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments, both for cash and credit, from the date of inventory, as provided for in first section of this clause." The insurance under policy No. 3,694, was effected about the 1st of July, 1904, and the inventory is claimed to have been taken about the 1st of August of the same year. By the terms of the contract it became the duty of the insured to keep a set of books, presenting a complete record of business transacted, including all purchases, sales, and shipments, from the date the inventory is required to be taken, or through the life of the policy. There was a change of bookkeepers about the 1st of January, 1905, and a change in the method of keeping the books from a double entry to a single entry. When this change in the system of keeping books was made, the books kept prior to January 1, 1905, were footed up, and the aggregate amount of the footings of the old books, showing the purchases, sales, shipments, etc., brought forward and placed in the new books, so that the new books only contained the footings of the amount shown by the old books. From January 1, 1905, to the date of the fire, these new books containing these footings seem to have been kept down to the date of the fire, together with the inventory taken on the 1st of August, and were kept in the iron safe and produced after the fire. The old books were placed on top of the safe, and when the fire occurred they were burned, so that when the adjuster reached the premises the only books that were produced were the books kept from January 1, 1905, containing the footings brought forward from the books kept from July, 1904, to January, 1905. It is not a matter of dispute that the books kept from the date of the issuance of the policy to the 1st of January were not kept in the safe and were destroyed

in the fire. We think, under these facts, there was no compliance with the iron safe clause. The reasonable enforcement of iron safe clause in insurance policies has been universally upheld by the courts. Indeed, to prevent fraud, and for protection of the rights of insurance companies, some such clause seems necessary.

This case presents on its face quite a different case from that of *Insurance Co.* v. *Sheffy,* 71 Miss., 919, 16 South., 307. In the *Sheffy case* the court said: "The evidence shows very clearly that the application of the insured for the policy in suit was completed and signed, and the policy delivered, not earlier than the 17th day of December, 1892. We may properly assume, so far as the rights of the insurer are affected by the date of the contract, that it was actually made on the day named. On that very day the insured took a new inventory of his stock of goods, and this last inventory, as well as the two preceding ones, dated, respectively, September 17, 1892, and December 17, 1891, were kept in the iron safe, and were produced after the loss. On the 17th day of December, 1892, the insured opened a new set of books, transferred to them all the footings or balances from his old books, and thereafter, from said 17th day of December, entered fully in the new set of books itemized statements of every transaction occurring in the conduct of the business. The forfeiture under the iron safe clause is, by the appellant, contended for because of the failure of the appellee to keep in the iron safe the old books, showing the itemized statements of the transactions antedating the policy sued on, and to produce them after the loss occurred. Why these old books of account were not kept in the safe, but were left outside and consumed in the fire which occasioned the loss is made clear by the evidence. It is perfectly apparent that the insured did exactly what this iron safe clause required him to do. This clause made it obligatory upon him to keep a set of books showing a record of business transacted, including all purchases and sales, both for cash and credit, and

to keep the inventory and books securely locked in a fireproof safe, and this condition the insured fully complied with. His duty was to show a set of books showing a record of business thereafter transacted, including future purchases and sales. He did not consent to preserve indefinitely his old books, showing all the past transactions. So far as this contention may be concerned, it was immaterial whether he had any books of account antedating the policy. He had his inventory, showing the amount of stock he had when the policy was issued, and he was to keep a record of his future business transactions, with a view of disclosing, when necessary, when and where and how the stock went. We repeat, the duty laid upon him was prospective, and he fully met it." The decision in the *Sheffy case, supra,* will readily be distinguished from the facts presented by this case. Mount did not keep a record of his books prospectively, such as were required by the iron safe clause. From the date of the issuance of the insurance up to January, 1905, the books covering that period having been destroyed by fire, it was impossible for the insurance company to tell anything about the condition of the stock of goods, except from the balances brought forward and placed in the new books. There was no record kept during that time of sales, purchases, and shipments, as is required by the clause of the insurance policy referred to.

We come, now, to the next question involved: When there has been a forfeiture under the policy, known to the insurance company only after loss, and no act done by the insurance company which could mislead the insured in any way, or occasion him any inconvenience or trouble, and the insurance company has done nothing to waive its rights, either impliedly or expressly, except merely fail to return the unearned premium, will this single fact be considered as a waiver of the breach? The particular clause of the policy involving this question is as follows, viz.: "This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as here-

inbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this ,company by giving notice, it shall retain only the *pro rata* premium." It is contended by appellee that a mere failure to return or offer to return the unearned premium, after loss has occurred and denial of liability on the part of the company, because of a breach of the conditions of the policy by the insured, will constitute a waiver on the part of the company to claim the forfeiture; and in support of this proposition appellee cites the *Dobbins cases* in 81 Miss., 623, 33 South., 504, and 81 Miss., 630, 33 South., 506. We do not understand that this court has ever held, in any case, that the mere fact of the failure of the insurance company to return the unearned premium after a loss has occurred, and until there has been a demand made upon it by the insured for this unearned premium and an offer to surrender the policy, will in itself, unaccompanied by any other fact, constitute a waiver of the forfeiture. In the case of *Dobbins* v. *Insurance Co.,* 81 Miss., 623, 33 South., 504, the court said: "The facts show that the fire occurred on the 23d of October. Dobbins notified the agent, Montague, on the 24th. Without knowledge at that time of the additional insurance, but six hours thereafter, on the same day, when there had been no change whatever in the condition of the parties, he was fully informed of the additional insurance. The insured, Dobbins, lived in the same town within a few minutes' easy communication. After full knowledge, on the 25th, of the other insurance, the agent had another conversation with Dobbins, in which he told him that the policy had been forfeited on account of the additional insurance, but that he would report the matter to the company; and, more than that, when Dobbins came to get blank proofs to make proof of loss, he furnished them. He furnished them, of course, for proofs to be made. There would have been no

sense in the act otherwise. Furthermore, he testifies himself that he had power to cancel the policy, and was under no necessity to send it to the company for cancellation. The policy had been in force about one month. The insured had paid the premium for three years. No portion of the unearned premium was returned or offered to be returned." And the court, under these facts, because of the acts and conduct of the agent acting for the company, held that the insurance company was estopped to set up the forfeiture. It will be seen in this case that the question presented was not the single question of whether or not the mere retention of the premium by the company estopped the company from setting up the forfeiture on that ground. The decision is based upon the acts and conduct of the agent, and holds that under the facts in the case his acts and conduct estopped the insurance company to set up the forfeiture. In the second case of *Fire Ass'n v. Dobbins,* 81 Miss., 630, 33 South., 506, Dobbins sued the insurance company, and it defended on the ground that he had taken out other insurance on the same property, subsequent to taking out the policy sued on, without the knowledge and consent of the defendant company, and in violation of the terms of the contract of insurance which rendered the policy sued on void. In this case there was a conflict of testimony, and the case was tried before the court without a jury; both parties waiving a jury. The evidence for defendant was that the policy sued on was issued in July, 1901, and the premium paid to the company on September 1, 1901, by the local agents, and the fire occurred October 23, 1901, and plaintiff came into the office of the local agents October 24th, the next day after the fire, and notified them of the fire, when he was told that the premium due had not been paid by him. The premium was then paid to the local agents, and for the first time the agents found out that Dobbins had another policy on the same property; the agent testifying that he did not recollect whether it was before or after the premium was paid that Dobbins informed him of

the existence of the other policy. The agent also testified that he then told Dobbins that the taking out of the other policy avoided the policy sued on, but that he would send in the report of it to the company. On the other hand, the plaintiff testified that he informed the local agents of the fire on the 24th of October, and then informed them of the other policy, and went back the next day and paid the premium and got a receipt. The insurance company never returned or offered to return any part of the premium. On these facts, there being a conflict in the evidence, the plaintiff claiming that he informed the local agents of the fire on the 24th of October, and that he then informed them of the other policy, about which they made no objections so far as the facts show, and after notifying them of the loss, and informing them of the other policy, went back the next day and paid the premium and got a receipt, and still, though the insurance company under these facts declared the policy forfeited, it did not offer to return the premium, the court said, because the insurance company held onto the premiums with full knowledge of the loss, having taken the premiums after the loss, it could not set up the forfeiture.

We do not think that either one of the cases in 81 Miss., and 33 South., holds, or intended to hold, that the mere fact, unaccompanied by any other circumstances, where knowledge comes long after the premiums are paid and the insurance effected and loss occurs, and when the only contest that exists between the parties is as to liability under the policy, that the insurance company does not offer to return the unearned premiums will estop it from claiming the forfeiture; nor do we find any other case that holds this. In both the *Dobbins cases* it clearly appears that the insurance company had done something affirmatively changing the condition of the insured, and thereby creating an estoppel on the part of the insurance company to claim the forfeiture. In both those cases premiums were received by the insurance company after the loss had oc-

curr'ed, and when it was manifest that the company knew of the loss, or knew such facts and circumstances as would bind it with knowledge. No such case is presented here. The premiums in this case were paid at the time the policies were issued, and the breach of condition was not discovered until after the loss had occurred. The insurance company denied liability as soon as the adjuster reached the place where the loss occurred. In this case, under its facts, it was not necessary for the insurance company to tender the unearned premium until there was a demand made upon it for same and an offer on part of insured to surrender the policy. No demand having ever been made for the unearned premium, and no offer having ever been made to surrender the policy, the insurance company had a right to wait for this. When it was sued on the policy by the insured for its full amount, it had a right to rely upon the breach of the iron safe clause, and plead it, and then and there tender with their plea the unearned portion of the premium; and this delay, under the facts in this record, created no waiver or estoppel. If they denied liability as to all the policies, and tendered the unearned premium as to all, and liability was established as to some of them, the tender was nevertheless good as to that policy on which they were not liable. It was the duty of appellees to accept such part of the tender as appellants could lawfully make. Policy No. 3,786 is not invalidated as to that part of it which covers fixtures in the store, but is invalidated only to the extent that it covers the stock of goods. See *Mitchell* v. *Insurance Co.,* 72 Miss., 53, 18 South., 86, 48 Am. St. Rep., 535.

*Reversed and remanded.*

### SUGGESTION OF ERROR.

After the rendition of the foregoing opinion the appellant company filed a suggestion of error asking for a reconsideration of the decision in so far as the court held that the policies should not be invalidated as to such parts as covered the fur-

niture and fixtures in the store building; appellant suggesting that the policies should be invalidated *in toto;* that, although the court had held, in *Mitchell* v. *Insurance Company,* 72 Miss., 53, 18 South. Rep., 86, that policies such as these in controversy, when issued and delivered in Mississippi were divisible as to goods and fixtures, yet the law in Louisiana, as shown in the case of *St. Landry* v. *Insurance Company,* was different, the Louisiana supreme court, in that case, having held that such policies were entire and indivisible; and that, as the policies in controversy were issued and delivered to the appellee in Louisiana the Louisiana law should govern.

In response to which suggestion of error,

MAYES, J., delivered the following supplemental opinion:

It appearing on suggestion of error that the policies of insurance sued on were made in the state of Louisiana, it is the opinion of the court that the judgment should be modified, so as to invalidate that part of policies No. 3,786 and No. 4,050, covering the fixtures in the store, as well as that part which covers the stock of goods, in conformity to the decision of the Louisiana courts upon this subject. The case of *Mitchell* v. *Insurance Company,* 72 Miss., 53, 18 South., 86, 48 Am. St. Rep., 535, is not applicable here, since the contract of insurance is a Louisiana contract, merely brought into this state for purposes of suit; the Louisiana courts having held contrary to the *Mitchell case, supra.*

To the extent indicated in this opinion, the suggestion of error is sustained.