## HARTFORD FIRE INS. CO. v. DOLL.

Circuit Court of Appeals, Seventh Circuit.
January 5, 1928.

No. 3892.

1. **Insurance ⟲539(6)—Failure of insured because of injury to give six-day notice required by fire policy did not bar right to maintain suit.**

Failure of insured to give six days' notice of loss in accordance with requirement of fire policy *held* not to have barred his right to maintain suit thereon, where failure was due to injury to insured and notice was given by company's agent, particularly in view of provision of policy in effect contemplating that policy provision for notice would, in practice, be complied with through agent's report.

2. **Insurance ⟲668(10)—Evidence as to progress of fire before building fell during tornado held for jury.**

In suit on fire insurance policy containing a provision to effect that insurance would cease if building should fall, except as result of fire, evidence as to progress of fire before building fell during tornado *held* sufficient for jury.

**3. Insurance ☞421—Insurer, under policy excepting liability in case building falls before fire, is liable for entire loss resulting from fire starting before tornado destroyed building.**

Where fire policy provided that insurance would cease if building fell, except as result of fire, insurer is liable for entire loss resulting from destruction by fire, which started before building fell during tornado.

**4. Insurance ☞499—Measure of recovery for insured property, burning after building fell during tornado, is value at time it burned.**

Measure of recovery under policy providing that insurance should cease if building fell, except as result of fire, is value of property at time it burned, in the condition in which it then was.

In Error to the District Court of the United States for the Evansville Division of the District of Indiana.

Action by George J. Doll against the Hartford Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Remanded, with directions.

Burke G. Slaymaker, of Indianapolis, Ind. (Myers & Snerly, of Chicago, Ill., and Slaymaker, Turner, Merrell, Adams & Locke, of Indianapolis, Ind., on the brief), for plaintiff in error.

Woodfin D. Robinson, of Evansville, Ind., for defendant in error.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. This controversy grows out of two fire insurance policies issued by plaintiff in error company to defendant in error Doll, one for $2,000 on his stock of general merchandise and store fixtures, and one for $6,000, being $5,000 on the merchandise and $1,000 on store fixtures, all contained in a brick store building in Griffin, Ind. Two clauses of the policies are involved, viz.:

"If fire occur the insured shall within six days give notice of any loss thereby in writing to this company."

"If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

There are involved, also, the questions whether the judgment finds support in the evidence, and of the correctness of the court's charge respecting the measure of recovery.

Griffin was visited by a tornado, which destroyed all but 4 of its 75 houses, killing 50 of its inhabitants, and injuring others. Doll's store fell, and he was severely injured, being rendered unconscious for some days, blind for several weeks, and confined during that time, and some weeks more, in a hospital 25 miles away.

There was evidence to the effect that, just before the tornado struck, there was fire in the merchandise, counter, and shelving on the south side of the store, near a stove in which there was a hot coal fire burning. Following the building's fall, the inflammable débris, including the fallen merchandise, was burned; all of the stock and fixtures which had been covered by the policies being thus consumed by fire.

Doll could not and did not himself give to the company, within six days, notice of the loss. His father-in-law, Armstrong, who was the company's agent at Griffin, sent the company, within the six days, the report in writing of the loss, usual under the policies. After leaving the hospital, and within the time fixed by the policies, Doll supplied the company with proofs of loss, setting forth a total loss by fire under the policies; the sound value of the stock and fixtures before any fire or tornado being fixed at over $16,000.

The court charged the jury, in effect, that, if there was fire in the merchandise and fixtures before the tornado caused the building or any substantial part of it to fall, the company would be liable to the same extent as if the insured property had been wholly destroyed by fire, and the tornado had not intervened. The verdict was for the full amount of the policies, and judgment was given accordingly.

[1] We consider first the company's contention that Doll's failure to give the notice under the six-day clause of the policy barred his right to maintain the suit. To this we cannot accede. The clause in no way concerns the indemnity itself, but only the procedure after loss under the policies has accrued. Whatever the office of the clause may be under usual conditions, it is hardly possible that its literal application to the extraordinary circumstances here appearing was within the intent of the parties.

The Supreme Court considered a question quite similar in principle in Germania Fire Ins. Co. v. Boykin, 12 Wall. 433, 20 L. Ed. 442. There the policies required that in case of loss the insured render the insurers a statement of the origin of the fire, particular account of the loss, etc., to be signed and sworn to by the insured. He submitted his affidavit containing statements which, if true, would have invalidated the policies. For the insured it was contended he was insane when he made and submitted the affidavit, and thereupon the companies maintained that, if he was insane, the required proof was not supplied, and the action must fail for

want of it. Of this contention the court said: "It is too repugnant to justice and humanity to merit serious consideration. There are two obvious answers to it. * * * Second, if he was so insane as to be incapable of making an intelligent statement, this would of itself excuse that condition of the policy."

Other cases where courts have held that impossibility of compliance will excuse performance of conditions appertaining to procedure after loss occurs under insurance contracts, are Woodmen Accident Ass'n v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 Am. St. Rep. 777; Reed v. Loyal Protective Ass'n, 154 Mich. 161, 117 N. W. 600; Stevens & Co. v. Frankfort Marine, etc., Co. (C. C. A.) 207 F. 757, 47 L. R. A. (N. S.) 1214.

But in our view the record discloses a further reason why the clause does not bar the action. From the testimony of the company's local agent, Armstrong, it is fairly inferable that in this, as in all cases, it is the company's local agent who, learning of the loss, undertakes compliance with the requirement of notice, by sending to the company, on blanks provided by the company for that purpose, the first information respecting the occurrence, and the desired details. Armstrong made such report to the company, not only of this but of other cases where he had placed such policies and the insured property was burned on that occasion. He represented several companies, all of which had supplied him with such loss report blanks. Some of the blanks became lost in the storm, and he used for all the losses such as he had remaining. The conclusion that it was contemplated that the policy provision for this notice would, in practice, be complied with through this report of the agent, is helped by a printed clause on the report blank, which is:

"*Instructions to Insured.*—It is the duty of the insured to use his best endeavors to protect the property insured against loss or damage both during and after a fire. Follow the directions of the policy in this matter. Agents will so instruct insured, should such instruction be necessary."

This is, in effect, a direction by the company to its agent to notify the insured to do something which, in the same sentence of the policy as that which prescribes the notice of loss, and in terms no less imperative, requires the insured to do the very things whereof the agent, by this clause, is directed to remind him. The fair inference is that the information of the fire will be communicated through the agent; but as to the care of the property after the fire the agent should remind the insured of his contractual duty, which manifestly the insured, rather than the agent, is ordinarily best able to perform.

It is contended for the company that the evidence wholly fails to show that the burning of the property insured commenced before the fall of the building, or any part of it, and that therefore its motion for a directed verdict should have been granted. Concededly, if the insured property did not start to burn until after the building fell, the fallen building clause of the policies would bar recovery. It appears that, very shortly before the tornado which destroyed the building, there was a blast of wind which shattered the glass of the store front. The evidence showing fire in the store before this breaking of the glass is, to say the least, meager, and the company claims that such evidence is entirely wanting, and that the breaking of the glass was such a falling of part of the building as voided the policies, and relieved it from liability thereafter for any fire loss.

The glass in such a building is not an integral part of the structure itself, in that it holds or sustains any part of it, but is held by the building structure. It is an exceedingly fragile element, easily shattered by wind pressure or a comparatively slight blow, leaving the structure, as such, wholly intact. The breaking of windows is of such frequent occurrence, resulting from such a variety of causes, as to make it quite absurd to suppose the clause contemplates that every such breaking should be regarded as such a partial falling of the building as ipso facto to terminate the insurance. Had the broken glass been the extent of the storm's toll, and had no fire occurred about that time, it would border on the fantastic to assume that either party would have considered the contract thereby terminated.

The company's contention that the evidence fails to show fire in the store at any time before the building's fall is not supported by the record. Two witnesses testified without reserve that, very shortly before the building fell, the counters next to the open stove door and the shelving back of the counters and the merchandise there and thereabout were burning. One of them, Doll himself, said he was at the front when the glass was broken, and, turning around and starting back toward the stove, he saw fire as stated. Another witness says he saw it from the outside, and his evidence may even warrant the conclusion that this was before

the glass was broken. There are some witnesses who saw the light, but could not say whether it was light from the open stove door or from fire in the merchandise. A number of witnesses testified to being in the store at the time, and that they saw no fire other than that in the stove, and smelled none. While their testimony concededly throws much doubt on the correctness of the testimony of those who positively swore they did so see it, the question was for the jury. The court distinctly charged that, if the insured property was not on fire before the building fell, there can be no recovery on the policies. The jury's finding of liability is a necessary finding that some of the insured property was afire before the building fell, and this we are not at liberty to disturb, even though a perusal of the record might indicate to us that a contrary conclusion would have been easily sustainable.

[2] We cannot say from the evidence that it is impossible or even improbable that the truth on this proposition is on the side of defendant in error. There was a large stove about the center of the store, near its south side, whose large southerly facing door had been opened some minutes before to check the strong coal fire in the stove. The extraordinary atmospheric conditions might suddenly have drawn or blown fire from the stove toward the nearby merchandise and fixtures and very quickly ignited them; and while the burning coal would have been sufficient to have first ignited the fire after the fall of the building, it is not less possible that, if the merchandise were burning when the building fell, it continued to burn, causing the fire which concededly destroyed the merchandise, which had fallen with the building. All this involved questions for the jury, by whose finding thereon, followed by the judgment of the court, we are bound. We cannot say the court erred in failing to hold, as a matter of law, that the evidence did not warrant the conclusion that fire in the merchandise and fixtures was in progress before the building fell.

It follows that the company is liable on the policies, at least to the extent that the insured merchandise and fixtures were damaged by fire up to the falling of the building, and the verdict further establishes that the fire, after the fall, was a continuation of the fire in progress before the building fell.

This brings us to the question whether, in any event, the company is liable for fire loss occurring after the building fell. The jury was charged that, if the fire which destroyed the insured property started before the building fell, the company was liable for the entire fire loss. The authorities upon the proposition in the main sustain the propriety of this charge. Davis v. Com. Fire Ins. Co., 158 Cal. 766, 112 P. 549, 32 L. R. A. (N. S.) 604; Wiig v. Girard F. & M. Ins. Co., 100 Neb. 271, 159 N. W. 416, L. R. A. 1917F, 1061; Rochester German Ins. Co. v. Peaslee-Gaulbert Co., 120 Ky. 752, 87 S. W. 1115, 27 Ky. Law Rep. 1155, 1 L. R. A. (N. S.) 364, 9 Ann. Cas. 324; s. c., 120 Ky. 752, 89 S. W. 3, 28 Ky. Law Rep. 130, 1 L. R. A. (N. S.) 364, 9 Ann. Cas. 324; Jones v. German Ins. Co., 110 Iowa, 75, 81 N. W. 188, 46 L. R. A. 860; May on Insurance (3d Ed.) § 401; 6 Cooley, Briefs on the Law of Insurance (Suppl.) p. 327, *p. 836; Joyce on Insurance (2d Ed.) § 1446.

[3] We are not disposed to depart from the principle declared by these authorities, and under these we hold the liability of the company to extend to the entire loss resulting from the destruction by fire of the property insured.

But there is yet another serious question —one which goes to the extent of the recovery. The court charged the jury, in substance, that, if the fire started before the building fell, the plaintiff was entitled to recover the full amount of the policies, since the evidence shows all the insured property was totally destroyed by fire, and was worth more than the face of the policies. The court declined to instruct, as requested by defendant, that plaintiff could not recover for any loss to the insured property occasioned by the building's fall.

It is plain from the evidence that, up to the time the building fell, whatever fire there was in the store was confined to merchandise, shelving, and counters on the south side, in the vicinity of the stove. It was in the shoes and overalls, and possibly some other lines, of this stock of general merchandise. It seems that the bulk of the stock was on the north side of the store and in adjacent rooms, all of which went down with the building. It is manifest that all such as was not, up to that time, destroyed or damaged by fire, was very materially damaged in the fall of the store. It is too plain for argument that whatever fire there was then in the store to no extent contributed to its fall. The damage to the stock and fixtures by the fall of the store was from a cause wholly independent of the fire, and for any damage thus caused this insurer against fire loss only was not responsible.

If, for example, the stock which went down with this brick building consisted of crockery, glassware, eggs, and the like, it is highly probable that the value of such merchandise would entirely disappear with the fall; and if thereafter fire attacked what was left of it, no damage to such would be attributable to the fire, since it had then no value. Groceries, clothing, dry goods, tin ware, and most other merchandise, if plunged into the ruins of a two-story brick building containing it, would most likely be materially damaged thereby, and, if thereafter it was destroyed by fire, the recoverable loss under the policy of fire insurance would be the value of the property just before it was so destroyed.

A situation quite similar in principle was dealt with in Liverpool, London & Globe Ins. Co. v. McFadden (2 C. C. A.) 170 F. 179. The fire had burned for several days, and the question was whether the measure of insurance recovery on a large quantity of baled cotton was the market price at the time the fire began, or the somewhat larger price at the time the fire actually reached and destroyed the cotton in question. From the opinion we quote:

"The extent of the company's liability, as there declared, is not the cash value at the time the property is exposed to the danger of loss by the outbreak of the fire, but the actual cash value at the time the loss occurs, which is necessarily to be referred, if material, to the time when, in point of fact, as nearly as can be ascertained, the fire reaches and consumes or damages it. It may be arrested before it gets there, or be put out with only trifling loss. It is what happens in this respect, and just as it happens, that controls. Possibly it might conduce to certainty to have the loss estimated as of the time when the fire starts. But there is nothing which compels this construction. * * * *"

[4] Applying here the principle of that case, it would follow that the measure of recovery as to the insured property which burned after the building fell, was its value at the time it burned, in the condition in which it then was. That there may be difficulty in fixing the value of the property at the various stages is apparent; but because of the difficulty alone the insurer should not be penalized. From the condition here appearing it would seem not impossible to fairly approximate the value of the stock that went down into the débris—both the sound value and its value after this damage from the casualty not insured against. What stock there originally was is no doubt definitely known, and the salvage value of such stocks after the fall of the buildings in which they are contained is a matter of very wide experience with those versed in such things. It can only be said that in this case, as well as in others, the best evidence should be adduced of which the case is susceptible, and the trier of facts should make the best possible approximation in determining such questions of fact. The recovery should not exceed the loss which was occasioned by fire alone—the only hazard against which the policies were written.

To the extent that the court charged the measure of recovery to be the full face of the policies, the province of the jury was invaded, and error intervened, and, likewise, in refusing to give the above-mentioned requested charge. But we are not disposed to reverse the judgment generally, and to order a retrial upon all the issues. The error extends only to the assessment of the damages, and for the purpose only of correcting this error the cause should be remanded.

The cause is remanded to the District Court, which is hereby directed to submit for retrial the question only of the amount of loss upon the insured property caused by fire alone, eliminating whatever damage was caused to any of such insured property by the fall of the building in which it was contained.