26334. NALLEY *v.* HANOVER FIRE INSURANCE CO.

556

*J. G. Collins, Boyd Sloan,* for plaintiff.

*Colquitt, MacDougald, Troutman & Arkwright, G. Fred Kelley, William P. Whelchel, Smith, Smith & Bloodworth,* for defendant.

*Little, Powell, Reid & Goldstein,* for persons at interest.

SUTTON, J. C. V. Nalley brought suit against Hanover Fire Insurance Company to recover for a $2000 loss of merchandise by fire, under a policy of insurance, a copy of which was attached to the petition as exhibit A. The petition as amended alleged as follows: His property, consisting of automobile parts, accessories, etc., of the value of $8205.71, as per schedule attached marked exhibit A-1, was destroyed by fire on April 6, 1936, at a time when a tornado visited the city in which his business was located. Immediately after the destruction of the property and within the time provided by the contract he gave notice thereof to the defendant, and made proof of loss as required by said contract, and has fully complied with all the requirements of the policy preliminary to filing suit; and upon receipt of such notice the defendant finally and absolutely refused to pay to the plaintiff the amount due on said contract, and denied all liability thereunder. Immediately before injury to the building occupied by the plaintiff as a place of business, fire was ignited in the building occupied by a hardware company adjacent to and immediately west of plaintiff's building, and such adjoining building was blown down by the tornado, and the elevator motor from the fourth floor of the building crashed down upon the roof of the building occupied by the plaintiff and through plaintiff's building to the ground floor thereof, bringing with it a portion of the rear wall from the upper stories of the adjoining building, the bricks of which fell through the opening made by the crashing of the motor into the building occupied by the plaintiff. The falling of

the motor and the force of the tornado caused all of the front glass to be broken out of the building occupied by the plaintiff, forcing down more than half of the front wall of the building, taking away a portion of the roof the width of the building and extending back about fifteen feet from the front of the building, and taking with it a like portion of the second story and the overhead ceiling of the first floor, and at the rear of the building knocking down about one fourth of the rear wall of the second floor of the building; that the building occupied by the plaintiff was a strong, sturdy structure, built of brick, wood, and steel, a two-story building seventy by one hundred and eighty feet, and no part of the building fell within the meaning of the clause in the policy providing that "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." Unless said clause is construed as meaning a fall of the building or substantial part thereof from force of gravity or defective construction or innate weakness or condition or by fire, the clause is void, because it is immaterial, without consideration, contrary to public policy, and is a gambling stipulation because it is not conditioned upon an increase of or effect upon the risk. No part of the damage done to said building was caused by any weakness in the building itself, but was caused solely by the external force of the wind and tornado and the falling of the adjacent building upon that of the plaintiff. At the time of the damage to the building occupied by the plaintiff no fire had started therein, but fire in the adjacent building was already burning. None of the property described in the contract of insurance was in any way injured or damaged by the tornado or other agencies which damaged the building. After the plaintiff's building had been damaged, as alleged, a fire spread from the adjoining hardware building into the building occupied by the plaintiff, and completely destroyed the building and its contents, including the property covered by the contract of insurance. Had the insurance ceased on April 6, 1936, there would have been unearned at that time the premium on said policy for a period of nine months, the policy having been in force only three months, which under the short rate would have earned up to that date forty per cent. of the premium. The defendant has at all times retained, and now retains, all of the premium paid on

the policy, has never declared any forfeiture of the policy, and has never returned or tendered the premium on the policy or any part thereof. Upon the happening of the contingency of April 6, 1936, the defendant had immediate and prompt notice of the happening, and has insisted upon the plaintiff complying with the terms of the contract of insurance, in that through its local agents, on or about May 25, 1936, and at other times thereafter, it demanded of the plaintiff that he file his proof of loss according to the terms and conditions of the policy, the agents saying to the plaintiff: "File your proofs of loss. I would wait fifty or fifty-one days, as they may settle; but watch the months with thirty-one days, because it will be too late after sixty days." The agents had authority to sign policies for the defendant and to deliver the same, and in general to do all acts for the defendant that such fire-insurance agents of a non-resident corporation can usually do and perform. In compliance with said demand and requirements of the defendant the plaintiff has, at great trouble and expense, furnished the information required by the policy and filed his proof of loss, having expended the approximate sum of $75 in addition to his personal time in furnishing the proofs and information required. The defendant has never declared a forfeiture of the policy, but has at all times insisted upon the full force and effect thereof, and has never insisted or intimated, until after suit was filed, that said policy with all of its terms and conditions was not of full force and effect, but on the contrary did, on July 27, 1936, after the alleged happening of the contingency which is now relied on as a forfeiture, and with full knowledge of the same, expressly declare the policy of full force and effect and insist on its terms and conditions, as shown in a letter from the defendant, a copy of which is attached to the petition as exhibit X and made a part thereof; and the defendant has by its acts, omissions, and course of conduct, as set out, waived and estopped itself from now asserting the alleged forfeiture of the policy.

The policy, as shown by the copy attached as an exhibit, required that proofs of loss be submitted within sixty days after a fire, and, among other things, contained the following provisions: "The sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this

company in accordance with the terms of this policy. . . The loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company. . . No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements. . . If this policy shall . . cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate. . . If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." The letter, a copy of which was attached to the petition as exhibit X, reads as follows: "We beg to advise that the paper executed by you, purporting to be a proof of loss and making a claim against the Hanover Fire Insurance Company under its policy No. 1521 for $2000, has been by said company referred to us for attention. You are hereby advised that the said Hanover Fire Insurance Company denies any liability for said alleged claim of loss, and the said paper presenting said claim and purporting to be proof of loss is held in the office of the Fire Companies' Adjustment Bureau Inc., 715 Trust Company of Georgia Building, Atlanta, Georgia, subject to your orders. Unearned premium on the policy will be refunded to you by said insurance company upon the surrender of said policy. Without waiving or intending to waive any of the terms and provisions of the policy, and reserving all rights and reserving all defences to the said claim, we are yours very truly, Hanover Fire Insurance Company, by Fire Companies' Adjustment Bureau Inc. Per R. G. Backman, general adjuster." The defendant filed a general demurrer to the petition as amended, and the exception is to the judgment sustaining the demurrer.

■ The first question presented is whether or not, under the facts alleged in the petition, the defendant was relieved from liability under the fallen-building clause, which provides that "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." It is contended by the plaintiff that the word "fall" is an intransitive verb, meaning "to descend from a higher

to a lower position, either suddenly or gradually, through loss or lack of support; to descend by the power of gravity; to drop down; to sink," as defined by Webster, and that as applied to a building the fall must be from its own inherent weakness, as distinguished from being made to fall; that the clause means that if the building itself falls, the building itself acts, not being acted upon; that the building in the present case really never fell at all in the sense of the policy clause, because the facts are that a tornado visited the town in which the building was situate, and that the fall of the building "was caused by the external force of the wind and tornado and the falling of the adjacent building upon that of the plaintiff;" and that thereafter fire spread from the adjacent building and destroyed the goods of the plaintiff; and therefore that the defendant is liable. The defendant contends that the clause is plain and unambiguous, and is susceptible of only one meaning, namely, that if fire caused the building to fall and thereafter destroyed the goods of the plaintiff, liability would attach, but if the building fell from any cause other than fire, and afterwards the goods were destroyed by fire, no recovery could be had. The clause of the policy contemplates a possible *event,* the falling of the building, without distinguishing between the phenomenon of its falling from gravity incident to weakness or from the influence of some other force. When a building, once erect, lies prostrate, whether its descent has resulted from its "own inherent weakness," while acted upon by gravity, or has been brought about by some other force, in either event the building has *fallen.* A tornado, no less than weakness and the concomitant gravity, may cause it to fall. We think that the plain meaning of the clause, candidly approached, is that only in the event that fire should cause the building to fall would the defendant be liable for the destruction of the goods by fire after the substantial collapse of the building. The clause evidences an intention and agreement that, unless the fire itself first destroyed the building, the insurance should be in force only while the goods were protected or at least surrounded by the building. It is undisputed in the present case that the building did not fall or descend as the result of fire, but the fall actually preceded the fire.

The clause around which the controversy revolves does not seem to have been heretofore considered in either of the appellate courts

of this State, but it has been dealt with in other jurisdictions, and we find no case which conflicts with the view we have announced. Counsel for the plaintiff have cited cases which hold that where a building falls from its own inherent weakness the insurer is not liable for the destruction of goods by fire; and we are asked to hold that it is only under such circumstances that the insurer may be relieved under the fallen-building clause which appears in the policy in question. But the exemption does not stop there. The eminent textwriter, Mr. Couch, states in his Cyclopedia of Insurance Law, vol. 1, 4717: "In considering the fall of building clauses from the viewpoint of their application to particular kinds of losses, or, rather, losses from different causes in connection with the fall of insured buildings, numerous situations are met. For instance, the fall of a building from its own inherent weakness is within the clause [citing], as is the fall of a material part of a building due to an earthquake [citing] or to cyclone, tornado, or storm [citing]." He also states, on page 4716, that the test of liability under the clause is not whether the effect of the total or partial collapse is to increase the risk, but *the event itself,* provided what falls is a material, substantial or important part of the structure. See also 14 R. C. L. 110, § 280; 4 Joyce on Insurance, 4294, § 2583. It is not claimed in the present case that there was not a substantial physical collapse of the building; the only issue in that connection being as to the effect thereof under circumstances where fire afterwards destroys the insured goods. In Home Mutual Insurance Co. *v.* Tomkies, 30 Tex. Civ. App. 404 (71 S. W. 812), where a cupola was constructed for the purpose of operating therein part of the machinery belonging to the main building, and all of it, except a few uprights, fell in a severe storm, it was held that a policy containing a clause like the one in the present case was avoided. Upon certificate of dissent, the Supreme Court of that State, 96 Tex. 187 (71 S. W. 814), sustained the majority of the Court of Civil Appeals. In Scottish Union Ins. Co. *v.* Tomkies, 28 Tex. Civ. App. 157 (66 S. W. 1109), it was held that in an action on a policy containing a similar clause a good defense was set up by showing that a part of the building fell, not from fire, but as the result of a storm. In Hartford Fire Ins. Co. *v.* Doll, 23 Fed. (2d) 443 (56 A. L. R. 1059), it was held that recovery may be

had for all property destroyed by fire, although the building falls by the force of a cyclone, after the fire starts, under a policy that contained the fallen-building clause; but in the opinion it was said: "Concededly, if the insured property did not start to burn until after the building fell, the fallen-building clause of the policies would bar recovery." In Nichols *v.* Insurance Co., 71 Miss. 326 (14 So. 263, 42 Am. St. R. 465), where a cyclone blew the building down before the insured goods were destroyed by fire, it was held that the plaintiff could not recover.

In Fred J. Kiesel & Co. *v.* Sun Insurance Office of London, 88 Fed. 243 (certiorari denied, 171 U. S. 688), the plaintiff requested a charge that, if the building or goods were on fire before the building fell, the company was liable, even though it would not have fallen but for the wind. The court denied the request, but charged: "If that building fell, even after the fire had originated, but fell from a cause distinct from the fire,—in other words, if the fall was not caused by the fire,—and if at the time it fell the goods had not caught fire, and had not been damaged by fire, the defendant would not be liable in this case. If, on the other hand, the goods—and the goods and merchandise only were insured—in the building, if those goods had been damaged by fire or had caught fire prior to the falling of the building, you will find for the plaintiff." The Circuit Court of Appeals stated, in its opinion: "If the fall of the building was caused by fire, then the defendant was liable, whether the goods insured were burned before or after the fall; but if the fall occurred before the fire attacked the goods, and if that fall was caused *by an earthquake, by a waterspout, or by any other cause than fire,* the express agreement was that, when the fall occurred, the insurance ceased, and there was no liability. . . They failed to appreciate the fact that the cause of the fall was the test of the liability. . . But when they asked that the defendant be held although the fall resulted from the wind, regardless of the question whether it resulted either directly or indirectly from the fire, they attempted to evade and escape from the plain reading of the agreement. The court below perceived this mistake, and correctly charged that if the fall was caused by the fire the insurance company was liable, but that if it resulted from some other cause it was not. In reaching this conclusion, we have not overlooked the

customary appeal of counsel in insurance cases to the rule that where the terms of a policy are ambiguous or of doubtful meaning, its words should be construed most strongly against the company. Guarantee Co. *v.* Mechanics' Savings Bank & Trust Co., 47 U. S. App. 91, 101, 26 C. C. A. 146, 152, and 80 Fed. 766, 772. But it is equally well settled that 'contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and proper sense.' Imperial Fire Ins. Co. *v.* Coos Co., 151 U. S. 452, 463, 14 Sup. Ct. 379, 381.~ We are unable to discover anything ambiguous, doubtful, or obscure in the language of the clause over which this controversy rages. It was competent for these parties to fix the terms of their agreement. It is admitted that the contract was one for indemnity against loss caused by fire, and not against loss from other causes. It was for indemnity against such loss while the goods remained in the same state of hazard in which they were when the contract was made; and the policy contained various provisions. . . There was nothing unjust, unreasonable, or unfair in any of these stipulations. In making them, the parties merely exercised their rights of contract. They simply guarded more carefully and expressed more clearly their fixed intent to make a contract to indemnify the insured against loss caused by fire, and by fire only. Both parties well understood that this fire-insurance company did not undertake to indemnify the plaintiff against loss caused by tornadoes, cyclones, waterspouts, earthquakes, or winds. Observation had taught, and experience had proved, that the debris of a fallen building is far more likely than the standing building to take fire and burn; and the clause here in issue, which exempts the company from liability from the contents of such a building from the instant of its fall, when that fall is not caused by fire, is consistent with the main purpose of the contract, is rational and fair in itself, and is expressed in words so apt, terse, and plain that attempts to elucidate their meaning are vain. Where the terms of a contract are so clear that exposition serves only to obscure, interpretation is futile and rules of construction have no application."

Counsel for the plaintiff cite the case of Dows *v.* Faneuil Hall

Ins. Co., 127 Mass. 346 (34 Am. R. 384), in which it was said of the fallen-building clause: "It appears to us to have had in view the case of a building falling by reason of inherent defects or by the withdrawal of supports as by digging away the underlying or adjacent soil." This, counsel for the plaintiff in error avers, lends support to its contention as to the limitation of exemption from liability under the clause. But it was also stated in the opinion: "It might perhaps include the case of a building thrown down by a storm, a flood or an earthquake." That case is properly analyzed by counsel for the defendant in the present case as follows: "The facts of that case to which the discussion was applied clearly establish that no such limitation was involved. As a matter of fact three policies were involved, all of which contained the provision that the company should not be liable in case of explosion, unless fire ensued, and then only for the damage by such fire. One of the policies contained the fallen-building clause. As to the defense that an explosion occurred the court found against the defendant, holding that the explosion was but an incident of the fire, having been caused by inflammable gas coming in contact with the fire. Necessarily, the fall or collapse of any part of the building in that case was due to fire, and the fallen-building clause under its own terms could not apply." It is correctly stated by counsel for the plaintiff that the fallen-building clause involves a condition subsequent. It is then argued by counsel that a standing building forms a sort of furnace with draft and suction in case of fire, and that goods in the building are, under such circumstances, subject to a greater hazard than if the building should fall before the fire begins, and therefore, that, just as an immaterial misrepresentation will not ordinarily avoid a policy of insurance, neither will this condition subsequent do so; that at least a jury question is presented as to whether a greater hazard arises when a building collapses. However, we do not think it necessary or material to decide as to the comparative hazards in this case. The insurance company had its own views in that regard, and saw fit to provide against a possible contingency, to wit, the falling of the building which contained the insured goods. The parties contracted that upon the fall of the building from any cause other than fire, the insurance should immediately cease. The test of liability was, not whether the

effect of the fall would increase the risk, *but the event itself;* and being made a part of the contract, both parties are bound by such provision.

■ Another contention of the plaintiff is that by retaining the unearned premium with full knowledge of the loss and of the happening of the contingency the insurer waived the forfeiture. Let it be remembered that we are not dealing with a case where the insurer seeks to cancel a contract, and a return of the premium or any part thereof is a condition precedent to cancellation. Ordinarily, "if the policy is not illegal, and once attaches, and the risk is assumed, the entire premium is earned, and if a forfeiture results from a breach of a promissory warranty *or of a condition subsequent,* the insurer can not be required to return any part of the premium. It is all earned when the risk attaches." (Italics ours.) Parsons, Rich & Co. *v.* Lane, 97 Minn. 98 (106 N. W. 485, 494, 4 L. R. A. (N. S.) 231, 241). To give the insured a right to a return of an unearned premium under such circumstances, provision must be made in the contract of insurance. In the present case the policy provided: "If this policy shall . . cease, the premium having been actually paid, the unearned portion shall be returned *on surrender of this policy or last renewal,* this company retaining the customary short rate." (Italics ours.) It appears from the pleadings that the insurance company, through its adjusters, in denying liability advised the plaintiff that it was ready to pay over to him the unearned portion of the premium upon surrender of the policy; but that instead of surrendering the policy, as he had by contract agreed to do to obtain the unearned premium, the plaintiff withheld the policy. Manifestly the insurance company had the right to receive the policy before making any return of the unearned portion of the premium. Its failure to return it did not constitute a waiver. In *McAfee* v. *Dixie Fire Ins. Co.,* 18 *Ga. App.* 192 (89 S. E. 181), the plaintiff alleged in his petition that the insurance company had waived its right to rely upon an unauthorized vacancy of the premises as a breach of the policy, and could not set it up by way of defense, because the company failed to cancel the policy when it had knowledge that the building had been vacated for more than ten days; this fact having been known by the agent who issued the policy and who was also the renting agent of the plaintiff. The record in

that case shows that the plaintiff by amendment also set up a waiver by the failure of the insurer to return the unearned portion of the premium. The petition was dismissed on demurrer in the trial court, and the judgment affirmed by this court. As to the retention of the premium this court said: "Although the policy in this case provided that the unearned premium would be returned upon surrender of the policy, if the policy become void, the petition discloses the fact that the policy was not surrendered, but was sued upon."

In *Everett-Ridley-Ragan Co.* v. *Traders Ins. Co.*, 121 *Ga.* 228, 230 (48 S. E. 918), it was said: "The grounds upon which it is contended that non-compliance with the terms of the policy was waived were, that the company received from the insured, within sixty days after the fire, written notice of the fire and proofs of loss; that it called upon him to produce certain invoices, and required him to submit to an examination concerning the fire; that it failed to return a payment of his premium made after the fire occurred; that it put him to expense in securing duplicate invoices; and that it refused to pay the loss. None of these allegations are sufficient to constitute a waiver of non-compliance with the terms of the iron-safe clause. It was the duty of the insured, under his contract with the company, to give notice of the fire and produce satisfactory proofs of loss and documentary evidence required thereunder. The payment of the premium was but the just compensation due the company for the risk it had assumed upon the issuance of the policy, and its acceptance and retention in no wise prevented it from asserting its rights under the contract. 2 May on Ins. (4th ed.) § 567. Of course the refusal to pay the loss, under the circumstances of the present case, is in no respect a waiver." It is sought by the plaintiff to distinguish that case, because it was said in the opinion that the premium was "just compensation due the company for the risk it had assumed." It is said also, that "the company had no notice of the fact authorizing the forfeiture until the actual trial, and of course could not waive something of which they had no knowledge." An examination of the original record discloses that the policy contained a clause identical with the one in the present policy as to the return of unearned premium, providing that it would be returned on surrender of the policy. It is shown in the opinion that the insurer knew be-

fore the trial that the insured had not fully complied with the "iron-safe clause," it being stated that "Immediately after the fire the insured made a written statement containing, among other things, the following: 'I have only one book, known as ledger, dating 1899 and 1900. All other books were destroyed by fire. *I kept no record of cash sales.*'" (Italics ours.) That decision is also authority for holding, as we do, that in the present case no waiver resulted from the act of the insurer in retaining the unearned premium in the absence of a surrender of the policy as required by the contract. See also Ætna Ins. Co. *v.* Mount, 90 Miss. 642 (44 So. 162), to the same effect.

■ It is also contended by the plaintiff that a waiver resulted from the act of the insurer's agent in "requiring" the filing of proofs of loss, which involved trouble and expense to the insured; and that the insurer is estopped, also, from insisting upon the forfeiture. The petition, however, does not show that the insured was called on to do anything that he had not agreed to do in prosecuting his claim; nor does it show that the defendant had in any way misled him or put him to a disadvantage. The policy stipulated that the company would not be liable for any sum unless proofs of loss were submitted, that no loss would be payable until sixty days after receipt of the same, and that no action on the policy could be sustained until after such compliance on the part of the insured.. The suggestion or statement of the agent, "File your proofs of loss. I would wait fifty or fifty-one days, as they may settle; but watch the months with thirty-one days, because it will be too late after sixty days," did not amount to a waiver of the clause by the insurance company. No new burden was imposed or suggested. No promise was made. There was nothing said or done from which any waiver by the company could be said to have resulted. In *Graham* v. *Niagara Fire Ins. Co.*, 106 *Ga.* 840, 843 (32 S. E. 579), it was said: "But it was insisted by counsel for the plaintiff in error that the conduct and sayings of the company's local agent, suggesting that suit be at once filed and proofs of loss forwarded to the company, amounted to a waiver of the conditions expressed in the policy, which was binding upon the company. . . Treating the case just as if it were established by proof that Dearing & Hull were still the agents of this company at the time referred to, for the purpose

of soliciting insurance and receiving and forwarding to the company applications therefor, we are clearly of the opinion that they were without authority to bind their principal by any waiver of the terms of the policy after a forfeiture of all rights thereunder had taken place. The idea of a waiver of material conditions in a contract being binding upon the parties is based upon the right of the parties to change the terms of their agreement, though in writing, by a subsequent agreement, whether had in parol or in writing. To support such subsequent agreement, it is just as important that there should be some consideration for it as it is that there should be a consideration for the original contract. This consideration may be either a benefit to one party or an injury to the other. Hence it has been often held that where an insurance company waives certain terms of forfeiture in its policy, at a time when the forfeiture has not taken place, and the insured thereupon acts upon such waiver, to his injury, there is sufficient consideration to support the waiver, and the courts will not declare a forfeiture of the policy. For instance, in this case, had there been a direct waiver by the company of proofs of loss, made at a time when the insured had ample time to submit the same and bring his suit within the period of limitation prescribed by the policy, but refrained from doing so on account of the understanding had with the company, it could not afterwards be heard to set up in defense to an action on the policy a breach of the condition it had thus waived. If, however, the forfeiture had already taken place, and the contract had become, as it were, a 'dead letter,' we question very much whether, by the most formal acts of the governing body of the corporation, a waiver of such a defense would be binding upon the company. It was accordingly held, in the case of Williams v. Vermont Mutual Fire Ins. Co., 20 Vt. 222, that: 'A cause of action upon a policy of insurance, for a loss by fire, which has been barred by suffering the time limited in the charter of the insurance company for commencing actions to expire, is not capable of being revived by an acknowledgment, or a new promise.' It appears from the report of that case, that it was contended in behalf of the insured that the company had revived his policy by a formal action of its board of directors. To the same effect, see 1 Joyce on Ins. § 588. In the case of *Phenix Ins. Co.* v. *Searles,* 100 *Ga.* 98, it was decided that when proofs

of loss were not furnished within the time stipulated, a subsequent refusal to pay would not amount to a waiver. In the case of *Underwriters' Agency* v. *Sutherlin*, 55 *Ga.* 266-7, it was held that it was not within the power of local or adjusting agents of an insurance company, without express authority from the managing officers thereof, to waive a stipulation in the policy requiring suit to be commenced within twelve months after a loss occurred. See also *Ritch* v. *Masons Fraternal Accident Assn.*, 99 *Ga.* 112, and *Southern Home Building & Loan Assn.* v. *Home Insurance Co.*, 94 *Ga.* 167. There is certainly nothing in the record now before us to show that the company conferred any express authority upon Dearing & Hull to make the waiver insisted on by the plaintiff in error." The principle involved in the case last quoted has been followed in *Finleyson* v. *Liverpool &c. Ins. Co.*, 16 *Ga. App.* 51, 53 (84 S. E. 311); *Farmers Mutual Fire Asso.* v. *Steed*, 20 *Ga. App.* 329, 322 (93 S. E. 75); *Volunteer State Life Ins. Co.* v. *McGinnis*, 29 *Ga. App.* 370, 373 (115 S. E. 287); *Kelley* v. *Carolina Life Ins. Co.*, 48 *Ga. App.* 106, 107 (171 S. E. 847). It is true that the present case does not involve a forfeiture by the act of the plaintiff himself, but the event provided against did occur; and, the exemption from liability having become fixed at the moment of the fall of the building, the principle as to the inability of an agent to create a waiver against the insurer is equally applicable. All of the cases cited for the plaintiff have been carefully considered, but there is none that authorizes a holding different from the one we have made. It follows from what has been said that the court did not err in sustaining the general demurrer.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*