**PRUITT et al. v. HARDWARE DEALERS MUT. FIRE INS. CO., STEVENS POINT, WIS.**

No. 9345.

Circuit Court of Appeals, Fifth Circuit.

May 29, 1940.

B. D. Murphy, of Atlanta, Ga., and Joseph H. Blackshear, E. D. Kenyon, A. C. Wheeler, Chas. J. Thurmond, and Boyd Sloan, all of Gainesville, Ga., for appellants.

Grover Middlebrooks, of Atlanta, Ga., and G. Fred Kelley and Wm. P. Whelchel, both of Gainesville, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The fire insurance policy sued on covered a stock of merchandise in a four story brick building in Gainesville, Georgia, which collapsed and burned at the time of a tornado at about 8:30 A. M. on April 6, 1936. In defense was pleaded a clause in the policy, "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." The insurance company moved for an instructed verdict, but under Rule of Civil Procedure 50, 28 U.S.C.A. following section 723c, decision of the motion was withheld and the case was submitted to the jury, who found for the plaintiff. On motion within ten days thereafter for judgment notwithstanding the verdict, and in the alternative for a new trial, the court gave judgment for the defendant on the ground that the evidence conclusively showed that the collapse of the building caused by the tornado occurred before any of the merchandise was attacked by fire. The plaintiffs appeal.

The ground floor of the store was one large room with a small office partitioned off about the center of one side. To the rear of the office and about the center of the rear half of the store was a large cast iron stove weighing over 300 pounds, red hot on the morning in question. The merchandise near the stove was non-inflammable hardware, but on a desk near it the mail had been opened and there was some paper and packing materials, while beyond the office to the front was a counter of athletic clothing and fishing tackle, and to the rear of the store a stock of paper bags. Everyone in the store was killed except the assistant book-keeper, Harold Head. He testified that at the first approach of the storm he went to the rear to the elevator and found the electric current was off, and then went to the front door, the stove being all right each time he passed it. Through the store's glass front the storm could be seen approaching, with debris flying in the air. The darkness became complete. He started to the office, which contained a very large iron safe, with the doors open. As he went someone opened the front door, and a burst of wind broke in the plate glass front windows, hurling the glass back where Head was. The roaring drowned all other noises. He did not notice any smoke or fire in the store or anything blowing about, but was not in position to see the stove or what was happening in the store after he entered the office and crouched against the safe and behind its open door. The building soon fell, the wreckage confining him against the safe. At once he noticed smoke and heard fire crackling in the direction of the stove and could feel its heat. In five minutes, he thinks, he struggled upwards free, and fire was coming through the debris which was ten or twelve feet deep. Some witnesses testify to seeing flames coming from the ruins within a minute or two after the tornado passed, it having lasted only one or two minutes. Some saw smoke rising from more than one place. Others say they saw neither smoke nor fire for some time later. Many say there was a very strong wind which preceded the tornado by several minutes, which blew men and automobiles about the streets, and which could be the same that blew in the glass front of the store. Head, the only witness of what happened in this store, was not impeached in any way, but due to the excitement of the occasion his impressions of time may not have been accurate, and he might have failed to notice all that happened. He admits that he could not see or hear because of the darkness and roaring just before he got to the office, and was in no position to observe anything after he got behind the safe door. Exactly what happened to and about the stove in the moments between the blowing in of the glass front and the fall of the building no witness knows. It must rest on inference from the circumstances.

The floors and ceilings of the building were of wood. When they fell on the red hot stove a fire naturally would result, and a conclusion that this fire was thus originated, and so was not within the insurance, would be entirely justified. If the building had not fallen, but the fire had occurred, a conclusion that the stove was blown over by the wind which broke in the glass, that the coals were blown around, or that the inflammable goods towards the front of the store were blown back against the red hot stove and ignited would not be unreasonable. It would not necessarily be contradictory of Head's tes-

timony. That the building did fall means only that two possible origins of the fire are suggested, near in time, but very different as respects the insurance. One feels, as did the judge, that the fall of the building is the more adequate and probable explanation of the fire; but if there was fire in several places in the ruins immediately after the storm, as some witnesses say, that would be easier explained by fire being scattered before the building fell than by the ruins falling on the stove. The question was for the jury.

■ The fallen building clause in the policy is reasonable and valid in Georgia, as elsewhere. Nalley v. Hanover Fire Ins. Co., 56 Ga.App. 555, 193 S.E. 619; Smith v. Ætna Ins. Co., 58 Ga.App. 711, 199 S.E. 557; Hartford Fire Ins. Co. v. Doll, 7 Cir., 23 F.2d 443, 56 A.L.R. 1059. The clause in Georgia, and generally elsewhere, is treated as in the nature of a condition subsequent, the burden of establishing a defense under which is on the insurer. Hanover Fire Ins. Co. v. Pruitt, 59 Ga.App. 777, 2 S.E.2d 123. Note to Hartford Fire Ins. Co. v. Doll, 56 A.L.R. at page 1074. Similarly, where a cancellation was claimed, the court said: "As the period for which the policies were written had not expired when the loss occurred, defendants had the burden to show that the insurance was not in force at that time." Ætna Ins. Co. v. Kennedy, 301 U.S. 389, 395, 57 S.Ct. 809, 813, 81 L.Ed. 1177. Here the plaintiffs proved, as they had the initial burden to do, that they had a policy insuring the goods for a time stated, that during that time the goods were lost by fire. It devolved on the defendant to prove, if it could, that the insurance by the condition in question ceased by the fall of the building before the loss. It must prove it by the preponderance of the evidence on the point. If no evidence, direct or circumstantial, is given, or if the evidence in the opinion of the jury is so balanced that there is not a preponderance for the insurer's contention, the defense fails. We have seen that there is really no direct testimony as to when and how the fire outside of the stove started. There are two opposing theories about it, each claimed to be supported by the circumstances. We have said in Mutual Life Ins. Co. v. Zimmerman, 5 Cir., 75 F.2d 758, 762, "Circumstantial evidence, even in a civil case, must not only consist with

the theory that authorizes recovery, but must fairly and reasonably exclude any other explanation of the facts. Unless it does this, the burden which rests upon the plaintiff to prove her case is not carried," citing among other cases Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. The same thing is true when the defendant has the burden. We think, as did the Georgia court in another case arising out of this very fire, that the question is for the jury under proper instructions. Hanover Fire Ins. Co. v. Pruitt, 59 Ga.App. 777, 2 S.E.2d 123.

■ The actual damage, if any, done the merchandise by the fire before the building fell must have been slight. But if the event insured against is in progress when the insurance terminates, the final loss caused thereby is recoverable. Rochester German Ins. Co. v. Peaslee-Gaulbert Co., 120 Ky. 752, 87 S.W. 1115, 89 S.W. 3, 1 L.R.A., N.S. 364, 9 Ann.Cas. 324. In Hartford Fire Ins. Co. v. Doll, 23 F.2d 443, 56 A.L.R. 1059, fire among the insured goods was taken as the test. In this case that must be the question, because if anything outside the stove was afire before the building fell it was the goods and not the building. But if they were burning, the fall of the building would not end responsibility for the loss by fire which was in progress, as the Doll case demonstrates, but injury to the goods done by the fall of the building would not be covered. If goods were smashed into junk by the collapse of the building and afterwards the junk was burned in the progress of the fire, only the junk value for those goods would be within the insurance.

■ In view of these things it is contended that there was no such certain proof of the amount of the loss as would authorize any verdict for plaintiffs. There was evidence of the kind and amount and value of the goods on each floor of the store, and of the probable injury to them of the collapse alone. Some of the goods, like anvils, horse shoes, nails, bolts, would not be injured at all by the collapse. A fair estimate, though not exact, might be made touching other things. Damages which cannot be exactly proven are often left thus to the fair estimation of a jury. In this case the jury could conclude that damage by fire, eliminating that done by the collapse, was proven, and authorized some recovery.

It follows that the judgment for the defendant notwithstanding the verdict ought not to have been entered and must be reversed. Appellants thereupon contend that we should order a judgment entered on the verdict, as was done in Duncan v. Montgomery Ward & Co., 8 Cir., 108 F.2d 848, 853. That, we think, would be a misapplication of Rule of Civil Procedure 50(b). The rule provides for a motion within ten days after verdict to set the verdict aside and for judgment on a motion for directed verdict made in the trial, and adds: "A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative." An alternative motion for new trial was made in this case. If the judge had refused the judgment on directed verdict for defendant primarily asked, as we have held he should have done, he should then have considered the motion for new trial. According to all the federal cases he has discretion to grant a new trial before another jury if he thinks the verdict is wrong, though there be some evidence to support it, and his action is generally not subject to review on appeal. In this case a new trial might be granted either because the judge thought the jury went wrong in not finding that the fall of the building preceded the fire in the merchandise, or because he thought the amount of the fire loss found was not justified. When we reverse the grant of judgment as on a directed verdict, the cause should be remitted to the district judge that he may pass on the motion for new trial. Cases may occur in which the trial judge may think his charge, or rulings on evidence, or other occurrences in the trial require a new trial. Rule 50 ought not to be so construed as to cut off his supervisory power over the verdict because he erred in giving judgment notwithstanding the verdict. To grant a new trial decides no one's rights finally, but only submits them to another jury, with an opportunity to each party to bring forward better evidence if he can, and with opportunity to the judge to correct his own errors if any. New trials are not abridged or disfavored by the new rules. The judge may even grant one on his own initiative without a motion. Rule 59(d).

The judgment in favor of the appellee is reversed, and the cause remanded with direction to the district judge to pass upon the motion for a new trial.