896

**VEARN v. CRANE.**
**No. 7128.**

Circuit Court of Appeals, Seventh Circuit.
July 2, 1940.

Rehearing Denied Oct. 2, 1940.

George A. Henry, of Indianapolis, Ind., for appellant.

John Kiplinger, of Rushville, Ind., and Howard S. Young and Howard S. Young, Jr., both of Indianapolis, Ind., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a judgment for defendant rendered upon a directed verdict in an action to recover damages for the death of his son. The court had, at the conclusion of all the evidence, reserved action upon defendant's motion and submitted the cause to the jury, which returned a verdict for $2,500 in favor of plaintiff. The court later set aside the verdict and directed one in favor of defendant.

On the late afternoon of August 17, 1938, plaintiff was driving his automobile east on Main Street, U. S. Route 40, in Greenfield, Indiana, just outside the city limits. As he approached the intersecting street, Franklin, running north and south, he had passed, first, a sign telling him of the city limits and of the speed limit of thirty miles an hour and, near the intersection, a sign limiting speed to twenty miles an hour. At the crossing, slightly west of the west line of Franklin Street extended across Main Street and in the center of the latter, was a sign seven feet long and equally high advising the public of a detour of Route 9 southward on Franklin Street. This route approaches Franklin Street from the east and the detour carried it south on Franklin.

According to plaintiff's testimony, as he approached the city, he was traveling at forty miles per hour. As he passed the corporate limits, he reduced his speed to "twenty-five to thirty" miles per hour. He testified that he ceased to feed gas to the motor and that as a result the rate of speed gradually lessened so that at the time he reached the street crossing, he was proceeding at not more than thirty miles per hour and still reducing his speed.

At the same time defendant was approaching from the east in her automobile. As she reached the intersection she turned to the left on the east side of the detour sign, intending to travel southward on Franklin Street. Just as her automobile began to emerge from behind the sign, as it proceeded southward, her car collided with

plaintiff's automobile, coming from the west on Main Street. Plaintiff testified that he looked to the front and to the north and south of the crossing but did not see her automobile until it was within two or three feet of his, bearing down upon him from his left, without signal or sign, and that it continued onward and struck his car on its left side, pushing it southeasterly until it struck the south curb of Main Street, where it turned over two or three times. His son, four years old, riding with him, was killed and for the resulting damages the action was brought.

The testimony of plaintiff's witness is to the effect that defendant's car emerged from behind the sign board, where it could not be seen, and, without stopping or warning, struck the plaintiff's car, causing the accident. Defendant's witnesses testified that as defendant turned to her left behind the sign, the view to the west was obstructed by the sign, that she gave a signal of turning, turned to the left, came to a stop with the front end of her automobile extending southwardly slightly beyond the sign and that plaintiff, proceeding on the south half of Main Street, just then came along and struck defendant's automobile as it was headed in a slightly southwesterly direction. Plaintiff's car was badly damaged and showed evidence of a heavy impact on its left side. Defendant's car was damaged only in the front, the bumper being torn loose and the grid work being broken in.

The sign board obstructed the view of defendant to the west and that of plaintiff to the east and it appears that neither could see the other approaching. Defendant claims that plaintiff was approaching at a reckless rate of speed and keeping too near the center of the street and that she, though he had the right of way, was free of blame. Plaintiff claims that he approached the crossing at a reasonable rate of speed, traveling well to the right, and that he was in no wise guilty of contributory negligence.

■ The questions for determination were whether defendant was negligent and her negligence the proximate cause of the injuries and whether plaintiff was guilty of contributory negligence. It is obvious that the sign in the street created a place of danger, and each of the parties, as they approached it, was bound to recognize it as such. Whether defendant was negligent

and whether plaintiff was contributorily negligent were strictly questions of fact to be answered by an analysis and consideration of the conflicting evidence,— properly the function only of the jury. To say that defendant's witnesses conclusively rebutted and reduced to naught the evidence of plaintiff is to substitute for the jury the judge as the determining factor in passing upon the credibility of the witnesses. To say that the testimony of plaintiff and of those who testified for him and the physical condition of the cars, as shown by the photographs, were wholly insufficient to sustain a verdict, is to say, as a matter of law, that the facts were such that they, though, controverted, did not justify submission to the jury. The governing principles are well recognized. Each party was bound to exercise caution commensurate with the obvious existing dangerous condition. Plaintiff's testimony tends to prove that he complied with his obligations in that respect, while defendant's tends to support her contention that she complied with her obligations and that plaintiff did not. The evidence was such as to require submission to the jury. Accordingly, the judgment is reversed with directions to set aside the order granting a new trial and directing a verdict for defendant and to enter judgment upon the verdict returned in favor of plaintiff and against defendant.

### On Rehearing.

■ The question presented by the petition for rehearing is this: Under Rule 50 (b), 28 U.S.C.A. following section 723c, where the trial judge reserves decision on defendant's motion for a directed verdict or, in the alternative, for a new trial, until after a verdict of the jury for plaintiff is returned, and then sets aside the verdict, directs one in favor of defendant and erroneously enters judgment thereon, what should be the order when the Circuit Court of Appeals reverses the judgment? Should we merely order the verdict reinstated, or should we also direct the trial court to pass upon the alternative motion for a new trial?

In Duncan v. Montgomery Ward, 108 F. 2d 848, the Circuit Court of Appeals for the Eighth Circuit held that when a trial court grants a motion for a directed verdict, it, in effect, denies the accompanying alternative motion for a new trial, so that the appellate court, upon reversal, should merely order re-

instatement of the verdict. Certiorari was granted, April 8, 1940, 309 U.S. 650, 60 S. Ct. 809, 84 L.Ed. 1001.

In Pessagno v. Euclid Investment Co., App.D.C., 112 F.2d 577, the opposite view prevailed. The court expressed doubt as to correctness of the decision in the Duncan case, pointing out that a motion for a directed verdict raises only the question of the sufficiency of the evidence under the controlling legal principles, while a motion for a new trial may present many other questions which the moving party has a right to have determined.

This same result was reached by the Circuit Court of Appeals for the Fifth Circuit in Pruitt v. Hardware Dealers Fire Ins. Co., 112 F.2d 140, 143. The court disapproved the Duncan case, saying: "An alternative motion for new trial was made in this case. If the judge had refused the judgment on directed verdict for defendant primarily asked, as we have held he should have done, he should then have considered the motion for new trial. * * * When we reverse the grant of judgment as on a directed verdict, the cause should be remitted to the district judge that he may pass on the motion for new trial. Cases may occur in which the trial judge may think his charge, or rulings on evidence, or other occurrences in the trial require a new trial. Rule 50 ought not to be so construed as to cut off his supervisory power over the verdict because he erred in giving judgment notwithstanding the verdict."

It is well known that Rule 50 (b) was promulgated largely with the idea in view of avoiding unnecessary new trials and it may well be that, if a motion for a directed verdict raises the same questions as those raised by a motion for new trial, final disposition of the motion for directed verdict likewise will work conclusive determination of the questions presented by the motion for new trial. In the present record, however, the alternative motion for a new trial attacks the correctness of the court's rulings upon rejection of proffered evidence during the course of the trial. The questions thus raised are not before us. Upon them defendant has not had her day in court. As appellee she could not present them in the present appeal. They can be determined only by the trial court in its disposition of the motion for new trial. Hence, in order adequately to protect defendant and to preserve her record upon the correctness of the rulings upon evidence, the trial court must

act upon those questions presented by the motion for new trial. Consequently the judgment will be reversed with directions to reinstate the verdict, overrule the motion for judgment notwithstanding the verdict, dispose of all questions raised upon the motion for new trial not presented or decided in this court and take such further proceedings as are consistent with the trial court's action on the motion for new trial and with the opinion of this court.

The petition for rehearing is denied.